CERVANTES v FARM BUREAU
GENERAL INSURANCE COMPANY OF MICHIGAN

Docket Nos. 259850, 259851, 260459, 260460. Submitted September 6, 2006, at Lansing. Decided October 12, 2006, at 9:05 a.m.

Claudia Cervantes and four others, after suffering injuries in a car accident, brought actions in the Calhoun Circuit Court seeking no-fault insurance benefits from, among others, Farm Bureau General Insurance Company of Michigan, which insured the people with whom the plaintiffs resided. During discovery, four of the plaintiffs were found to have entered the United States illegally. Farm Bureau moved for summary disposition with respect to those plaintiffs on the ground that, as illegal aliens, they could not lawfully be considered domiciled with the people whom Farm Bureau insured. The trial court, Conrad J. Sindt, J., denied Farm Bureau's motions for summary disposition, ruling that although the plaintiffs' status as illegal aliens could be considered when determining their residence, it was not a dispositive factor. The Court of Appeals granted Farm Bureau's applications for leave to appeal and consolidated the four cases.

The Court of Appeals *held*:

1. The determination whether each plaintiff was domiciled in the household of an insured person for purposes of the no-fault act requires the consideration of several factors, none of which may be given special weight. Accordingly, the trial court correctly refused to consider plaintiffs' status as illegal aliens to be the sole determining factor of their domicile.

2. The plaintiffs are not barred from recovering benefits under the wrongful-conduct rule because the act of entering the United States illegally was not the proximate cause of the accident that caused their injuries.

Affirmed.

1. INSURANCE — NO-FAULT — DOMICILE — ILLEGAL ALIENS.

A person's status as an illegal immigrant may not be considered the dispositive factor in determining whether that person is

domiciled in the same household with an insured person for purposes of the no-fault act (MCL 500.3114[1]).

2. INSURANCE — NO-FAULT — DOMICILE — ILLEGAL ALIENS — WRONGFUL-CONDUCT RULE.

Illegal aliens who are domiciled with an insured person are not barred from recovering no-fault benefits under the wrongful-conduct rule if entering the United States illegally was not the proximate cause of the underlying automobile accident.

*Barry F. LaKritz, P.C.* (by *Margaret L. Browning*), for Etelbina Robles-Macias, Leonila Robles-Macias, Fidel Martinez, and Joel Martinez.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Stephen R. Ryan* and *D. Andrew Portinga*), for Borgess Medical Center and Trinity Health-Michigan.

*Worsfold Macfarlane McDonald, P.L.L.C.* (by *David M. Pierangeli*), for Farmers Insurance Exchange.

*Nemier Tolari Landry Mazzeo & Johnson, PC* (by *Nancy Vayda Dembinski*), for Founders Insurance Company.

*Jonathan Shove Damon* for Farm Bureau General Insurance Company of Michigan.

Before: FORT HOOD, P.J., and BANDSTRA and DONOFRIO, JJ.

BANDSTRA, J. Defendant Farm Bureau General Insurance Company of Michigan appeals by leave granted the trial court's orders denying its motions for summary disposition under MCR 2.116(C)(10). We conclude that being an illegal alien does not automatically disqualify a person from being "domiciled" in a Michigan household for purposes of MCL 500.3114(1). We affirm.

In April 2003, plaintiffs Leonila Robles-Macias,
Etelbina Robles-Macias, Fidel Martinez, and Joel Mar-
tinez were traveling in a car owned by Cesar Garcia and
insured by defendant Founders Insurance Company.
Defendant Michael D'Anthony Davis drove his car over
the centerline, hitting Garcia's car and injuring plain-
tiffs. Leonila and Etelbina Robles-Macias presented
evidence indicating that they lived with their brother,
Salvador Robles-Macias. Fidel and Joel Martinez pre-
sented evidence indicating that they lived with Sebas-
tian Martinez Lopez, Fidel's brother and Joel's uncle.
Both Salvador Robles-Macias and Sebastian Martinez
Lopez were insured at the time of the accident by
defendant Farm Bureau.

Plaintiffs claimed that, under the no-fault act, MCL
500.3101 *et seq.*, they were entitled to personal injury
protection (PIP) benefits through their relatives' Farm
Bureau policies. During discovery, Farm Bureau sent
plaintiffs requests to admit that they had unlawfully
entered and remained in the United States and were
subject to deportation at any time. Etelbina and Leonila
Robles-Macias responded affirmatively to these re-
quests. Under MCR 2.312(D)(1), Leonila and Etelbina
Robles-Macias conclusively established that they were
illegal aliens at the time of the accident for purposes of
this action. Fidel and Joel Martinez did not respond,
and, under MCR 2.312(B)(1), Farm Bureau's requests
are deemed admitted. Farm Bureau moved for sum-
mary disposition of plaintiffs' claims under MCR
2.116(C)(10), which the trial court denied.

Farm Bureau argued in the trial court, and again in this
Court, that, because plaintiffs were illegal aliens, they
were precluded as a matter of law from establishing that
they were domiciled in the households of their insured
relatives under MCL 500.3114(1). Consequently, Farm

Bureau contends that plaintiffs' claims against it should have been dismissed under MCR 2.116(C)(10).

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. Likewise, we review de novo questions of law involving statutory interpretation and statutory construction. *Dressel, supra* at 561. When construing the provisions of a statute, our primary task is to discern and give effect to the intent of the Legislature. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

> This task begins by examining the language of the statute itself. The words of a statute provide "the most reliable evidence of its intent . . . ." *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981). If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent. *Luttrell v Dep't of Corrections*, 421 Mich 93; 365 NW2d 74 (1984). [*Id*.]

MCL 500.3114(1) provides:

> [A] personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the

person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. . . . When personal protection insurance benefits . . . are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits and is not entitled to recoupment from the other insurer.

At issue here is whether plaintiffs, as illegal aliens, were "domiciled in the same household" as Farm Bureau's named insureds.

In *Workman v Detroit Automobile Inter-Ins Exch*, 404 Mich 477, 495; 274 NW2d 373 (1979), our Supreme Court interpreted this same statutory term. The Court reasoned that, for purposes of construing the statute, "the terms 'domicile' and 'residence' are legally synonymous." *Id*. Reviewing precedents from Michigan and elsewhere regarding the two terms, the Court reasoned that the legal meaning of "domiciled in the same household" as the insured must be "viewed flexibly" and "only within the context of the numerous factual settings possible." *Id*. at 495-496, quoting *Montgomery v Hawkeye Security Ins Co*, 52 Mich App 457, 461; 217 NW2d 449 (1974). The statutory term has no absolute meaning; its meaning " 'may vary according to the circumstances.' " *Workman, supra* at 495, quoting *Cal-Farm Ins Co v Boisseranc*, 151 Cal App 2d 775, 781; 312 P2d 401 (1957).

The *Workman* Court identified four factors to consider when determining whether a person is domiciled in the same household as the insured:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household";

(2) the formality or informality of the relationship between the person and the members of the household;

(3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises;

(4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [*Workman, supra* at 496-497 (citations omitted).]

These four factors do not make a comprehensive and exclusive list; they are merely "[a]mong the relevant factors" to be considered. *Id.* at 496. See *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983). Accordingly, this Court has identified the following additional factors to consider when identifying the domicile of an individual:

(1) the person's mailing address;

(2) whether the person maintains possessions at the insured's home;

(3) whether the insured's address appears on the person's driver's license and other documents;

(4) whether a bedroom is maintained for the person at the insured's home; and

(5) whether the person is dependent upon the insured for financial support or assistance. [*Williams v State Farm Mut Automobile Ins Co*, 202 Mich App 491, 494-495; 509 NW2d 821 (1993).]

The *Workman* Court emphasized that, "[i]n considering these factors, no one factor is, in itself, determinative; instead, each factor must be balanced and weighed with the others." *Workman, supra* at 496. Accord *Williams, supra* at 495 (no factor should be given "special weight").

Thus, we must reject Farm Bureau's argument that an illegal alien cannot be domiciled in the household of a Michigan insured because, being subject to apprehen-

sion and deportation, that person can have no intention of remaining within the state. Farm Bureau's argument would exalt the subjective intent of a person to a determinative status in contravention of *Workman, supra* at 496. As this Court stated in *Williams, supra* at 495, giving special weight to the intent factor is improper.

Further, the question of an individual's intent is generally one of fact. *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 174; 530 NW2d 772 (1995). Thus, the question of plaintiffs' intent to remain in the state despite the risk of being apprehended and deported is one of fact. Certainly, many illegal aliens are not subject to deportation, which could reasonably lead to an expectation of permanency and therefore an intention of remaining. In any event, a fact-finder may consider the likelihood that plaintiffs would be apprehended and deported when determining whether they intended to remain in the households of Michigan insureds. Their status as illegal aliens does not establish, as a matter of law, that they lacked the intent to do so.

Farm Bureau further argues that, because plaintiffs engaged in "wrongful conduct" by entering the United States illegally, the trial court should not have "rewarded" their wrongful conduct by permitting them to establish that they were "domiciled in the household" of Farm Bureau insureds and, therefore, entitled to PIP benefits under the Farm Bureau policies. Farm Bureau references the "wrongful conduct rule" presented in *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995). The rule provides:

> When a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim generally applies to bar the plaintiff's claim:
>
> "[A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in

part, on an illegal or immoral act or transaction to which he is a party." [*Id.*, quoting 1A CJS, Actions, § 29, p 386.]

However, the wrongful conduct rule only applies if a "sufficient causal nexus . . . exist[s] between the plaintiff's illegal conduct and the plaintiff's asserted damages." *Orzel, supra* at 564. Stated differently, the wrongful conduct rule only applies if a plaintiff's wrongful conduct is a proximate cause of his injuries. *Id.* at 565. In *Manning v Bishop of Marquette*, 345 Mich 130, 136; 76 NW2d 75 (1956), quoting *Meador v Hotel Grover*, 193 Miss 392, 405; 9 So2d 782 (1942), our Supreme Court noted that, for a plaintiff's action to be barred,

"[the plaintiff's] injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted."

The *Manning* Court concluded, "It is not enough, then, to bar a plaintiff's recovery, that some illegal act be a remote link in the chain of causation." *Manning, supra* at 137.

Plaintiffs' illegal presence in the United States was not a proximate cause of their involvement in the April 2003 accident and their resulting injuries. The proximate cause of the accident was Davis's erratic and dangerous driving. Plaintiffs' illegal presence in the United States, even if considered to be a "but for" cause of the accident, is such a remote cause that the wrongful conduct rule does not bar them from recovering PIP benefits. *Id.*

We conclude that the trial court did not err when it denied Farm Bureau's motion for summary disposition

under MCR 2.116(C)(10). In doing so, we note that the issue presented here is not whether illegal aliens should be able to recover PIP benefits under the no-fault act. Had we concluded that illegal aliens cannot be "domiciled" in the home of an insured person under MCL 500.3114(1), plaintiffs would still receive those benefits from the insurer of the vehicle that they occupied at the time of the accident under MCL 500.3114(4)(a). See *Workman, supra* at 493-494. Thus, this is an internecine dispute between Founders, insurer of the Garcia automobile, and Farm Bureau, insurer of the relatives of plaintiffs with whom plaintiffs were allegedly domiciled, regarding which of them has to provide coverage under the provisions of MCL 500.3114. The broader question whether illegal aliens should receive coverage at all is not before us.

We further note that the Legislature has not included illegal aliens in the list of persons to be denied PIP benefits. See MCL 500.3113. We reject Farm Bureau's request that we, in effect, incorporate into the no-fault act a provision that a relative who is domiciled in the same household as the insured—and is thus entitled to PIP benefits under MCL 500.3114(1)—should nonetheless be denied those benefits if the person is an illegal alien. Farm Bureau's request is essentially that we engage in legislation, something we cannot do. *Lesner v Liquid Disposal, Inc,* 466 Mich 95, 101-102; 643 NW2d 553 (2002). While this case suggests a significant policy issue regarding the rights and protections that should be afforded illegal aliens under the no-fault act, it is the job of the Legislature and not this Court to address those concerns. *Hauser v Reilly,* 212 Mich App 184, 191; 536 NW2d 865 (1995).

We affirm.