**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED MARCH 30, 2010

STATE OF MICHIGAN

SUPREME COURT

ELIZABETH DAWE,

  Plaintiff-Appellant/
  Cross-Appellee,

and

BLUE CROSS BLUE SHIELD OF
MICHIGAN

  Intervening Plaintiff,

v

No. 137092

DR. REUVEN BAR-LEVAV &
ASSOCIATES, P.C., ESTATE OF
REUVEN BAR-LEVAV, M.D., and
LEORA BAR-LEVAV, M.D.,

  Defendants-Appellees/
  Cross-Appellants.

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

In this case we must decide whether a plaintiff-patient may pursue a

common-law medical malpractice claim against his or her mental health

professional when the mental health professional allegedly negligently placed the plaintiff in danger of harm at the hands of another patient or whether the Mental Health Code, in MCL 330.1946, abrogated such a common-law claim. We hold that MCL 330.1946 did not abrogate a plaintiff-patient's common-law medical malpractice claim when the mental health professional's separate duty arising out of his or her special relationship with the patient would apply and no "threat as described in [MCL 330.1946(1)]" was communicated to the mental health professional. MCL 330.1946(1). Therefore, we reverse the judgment of the Court of Appeals.

## I. FACTS AND PROCEDURE

On June 11, 1999, Joseph Brooks, a former psychiatric patient of defendants[1] Dr. Reuven Bar-Levav and Dr. Leora Bar-Levav and a former participant in the group therapy sessions attended by plaintiff, Elizabeth Dawe, entered defendants' office with a handgun. Brooks shot and killed Dr. Reuven Bar-Levav without warning. Brooks then entered the back office area and fired the gun into a room where plaintiff was participating in a group therapy session. Brooks killed one patient and wounded others, including plaintiff. After firing multiple rounds into the group therapy room, Brooks committed suicide.

---

[1] We note that Dr. Reuven Bar-Levav's first name has been misspelled throughout these proceedings. Because Dr. Reuven Bar-Levav is deceased, his estate is a party to this case, along with Dr. Reuven Bar-Levav & Associates, P.C., and Dr. Leora Bar-Levav. For simplicity, we will refer to Dr. Reuven Bar-Levav as a defendant and to "defendants" generally.

2

Plaintiff sued defendants, alleging that they were liable for common-law medical malpractice and under MCL 330.1946 for failure to warn her of or protect her from a threat. Plaintiff claimed that Brooks had previously made threatening statements to defendants and that he had demonstrated his ability to carry out the threats when he came to defendants' office with a gun on an earlier occasion.[2] Further, plaintiff claimed that Brooks gave defendants a "manuscript" that could be considered a threat of violence against other members of his group therapy sessions, including plaintiff. Finally, plaintiff alleged that defendants committed common-law medical malpractice by breaching their standard of care to plaintiff as a patient by negligently placing Brooks in her group therapy session when they knew or should have known that Brooks was not a suitable candidate for group therapy.

The trial court denied defendants' motion for summary disposition, and the case was heard by a jury. The trial court also denied defendants' motion at the close of plaintiff's proofs for a partial directed verdict on plaintiff's failure-to-warn-or-protect claim under MCL 330.1946. The jury returned a verdict in favor of plaintiff, and defendants moved for judgment notwithstanding the verdict (JNOV) and for a new trial, both of which the trial court denied.

---

[2] While in individual treatment, Brooks told a therapist at defendants' office that he had recently purchased a gun and contemplated going to New Hampshire to kill his ex-girlfriend's mother and commit suicide. The therapist asked Brooks to bring the gun to the office and, when Brooks did so, confiscated the gun and gave it to Brooks's father.

Defendants appealed, and, in a split decision, the Court of Appeals reversed the trial court's denial of defendants' motion for a directed verdict, vacated the judgment, and remanded the case for entry of an order granting defendants' motion for a directed verdict. *Dawe v Dr Reuvan Bar-Levav & Assoc, PC*, 279 Mich App 552; 761 NW2d 318 (2008). The Court of Appeals majority concluded that MCL 330.1946 placed specific limitations on a mental health professional's duty to warn or protect third persons and, therefore, abrogated all common-law claims for failure to warn or protect. The dissent would have affirmed the trial court's denial of defendants' request for relief because the dissent believed that MCL 330.1946 did not affect defendants' common-law duty to avoid placing others in danger of harm at the hands of a patient. We granted leave to appeal. *Dawe v Dr Reuvan Bar-Levav & Assoc, PC*, 483 Mich 999 (2009).

## II. STANDARD OF REVIEW

This case involves statutory interpretation, which presents a question of law that this Court reviews de novo. *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

## III. ANALYSIS

The issue before this Court is whether plaintiff-patient may pursue a common-law medical malpractice claim against defendants for breach of the applicable standard of medical care or whether MCL 330.1946 abrogates all common-law claims against a mental health professional for failure to warn third persons or protect them from harm, including the duty to warn or protect patients.

4

Specifically, we must decide whether our Legislature intended to entirely abrogate a mental health professional's common-law duty to warn or protect and limit that duty to only the types of threats described in MCL 330.1946(1) or, alternatively, whether it intended to limit the scope of the duty to warn or protect third persons but did not intend to completely abrogate the common-law "special relationship" duty of reasonable care to protect patients.

The Court of Appeals majority concluded that "MCL 330.1946 preempts the field on the issue of a mental-health professional's duty to warn or protect others, including the psychiatrist's other patients"; therefore, defendants "had no common-law duty to protect [plaintiff] . . . ." *Dawe*, 279 Mich App at 568. We disagree. We hold that MCL 330.1946 did not completely abrogate a mental health professional's common-law duty of reasonable care to protect his or her patients and that plaintiff may pursue a claim against defendants based on that theory of liability.

## A. A PSYCHIATRIST'S COMMON-LAW DUTY

Before the enactment of MCL 330.1946, a psychiatrist's duty to warn or protect was governed entirely by the common law. Under the common law, "as a general rule, there is no duty that obligates one person to aid or protect another." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). There is, however, an exception to this general rule when a "special

5

relationship" exists between the plaintiff and the defendant.[3]  *Id.*  As this Court has

stated:

> The rationale behind imposing a duty to protect in these special relationships is based on control.  In each situation one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself.  The duty to protect is imposed upon the person in control because he is best able to provide a place of safety.  [*Id.*]

Notably, Michigan caselaw considers the psychiatrist-patient relationship a

special relationship that places on psychiatrists a duty of reasonable care to protect

their patients.  See *Murdock v Higgins*, 454 Mich 46, 55 n 11; 559 NW2d 639

(1997), citing *Williams*, 429 Mich at 499; *Sierocki v Hieber*, 168 Mich App 429,

434; 425 NW2d 477 (1988), citing *Duvall v Goldin*, 139 Mich App 342, 351; 362

NW2d 275 (1984).

In the psychiatrist-patient context, the common-law duty not only requires a

psychiatrist to protect his or her patients but also to warn third persons or protect

them from harm by a patient under certain circumstances, regardless of the

psychiatrist's relationship with that third person.  The status of the duty owed to

third persons in Michigan law, however, was unclear before MCL 330.1946 was

adopted.  The duty was first recognized in Michigan in a Court of Appeals case

---

[3] This Court has determined that a "special relationship" exists in a variety of situations.  For example, this Court has classified the common carrier-passenger, innkeeper-guest, landlord-tenant, employer-employee, and doctor-patient relationships as special relationships.  *Murdock v Higgins*, 454 Mich 46, 55 n 11; 559 NW2d 639 (1997); see, also, *Farwell v Keaton*, 396 Mich 281, 290 n 4; 240 NW2d 217 (1976).

that adopted the reasoning of the seminal California Supreme Court case, *Tarasoff v Regents of the Univ of California*, 17 Cal 3d 425; 131 Cal Rptr 14; 551 P2d 334 (1976). *Davis v Lhim*, 124 Mich App 291, 298-301; 335 NW2d 481 (1983), rev'd on other grounds sub nom *Canon v Thumudo*, 430 Mich 326 (1988). In *Tarasoff*, the California Supreme Court held that psychiatrists have a duty to warn or protect a third person if the psychiatrists "in fact determined that [the patient] presented a serious danger of violence to [the third person], or pursuant to the standards of their profession should have so determined, but nevertheless failed to exercise reasonable care to protect [the third person] from that danger." *Tarasoff*, 17 Cal 3d at 450.

Although this Court later reversed *Davis*, we specifically declined to address at that time "whether a duty to warn should be imposed upon mental health professionals to protect third persons from dangers posed by patients." *Canon*, 430 Mich at 355.[4] We did not foreclose the possibility of a common-law duty of mental health professionals to warn third persons or protect them from harm by their patients in Michigan. Indeed, we recognized that other jurisdictions had found a duty of psychiatrists to warn or protect third persons, "the seminal case being *Tarasoff* . . . ." *Id*. at 355 n 18. Therefore, before the enactment of MCL 330.1946, psychiatrists in Michigan owed a common-law duty of reasonable

---

[4] Rather, in *Canon,* we consolidated three cases addressing the liability of government-employed mental health professionals and determined that those cases were controlled by governmental-immunity issues.

care to their patients that arose out of the special relationship and, potentially, a duty to warn third persons of or protect them from potential dangers posed by their patients.

## B. A MENTAL HEALTH PROFESSIONAL'S STATUTORY DUTY UNDER MCL 330.1946

Since *Canon*, our Legislature has codified a mental health professional's duty to warn or protect third persons from harm by his or her patients. In 1989, the Legislature enacted MCL 330.1946(1), which states in its current form:

> If a patient communicates to a mental health professional who is treating the patient a threat of physical violence against a reasonably identifiable third person and the recipient has the apparent intent and ability to carry out that threat in the foreseeable future, the mental health professional has a duty to take action as prescribed in [MCL 330.1946(2)]. Except as provided in this section, a mental health professional does not have a duty to warn a third person of a threat as described in this subsection or to protect the third person.

The issue here, therefore, is to what extent MCL 330.1946 abrogated a mental health professional's common-law duty.

## C. ABROGATION

The common law remains in force until modified. *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006). The abrogative effect of a statutory scheme is a question of legislative intent, and "legislative amendment of the common law is not lightly presumed." *Id.* Rather, the Legislature "should speak in no uncertain terms" when it exercises its authority to

8

modify the common law. *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006). Additionally, "[t]he Legislature is presumed to know of the existence of the common law when it acts." *Wold Architects,* 474 Mich at 234. Keeping these rules concerning abrogation in mind, we must consider the language of MCL 330.1946 and determine whether the Legislature intended to completely abrogate a mental health professional's common-law duty to warn or protect others when it enacted the statute. We hold that it did not.

Although the Legislature partially abrogated a mental health professional's common-law duties, the language of the statute expressly limits its own scope. The final sentence of MCL 330.1946(1) states that "[e]xcept as provided in this section, a mental health professional does not have a duty to warn a third person of a threat *as described in this subsection* or to protect the third person." (Emphasis added.) The type of threat described in subsection (1) is "a threat of physical violence against a reasonably identifiable third person . . . ." MCL 330.1946(1). Further, the patient making the threat must have "the apparent intent and ability to carry out that threat in the foreseeable future" before a mental health professional's duty under MCL 330.1946(1) is triggered. Therefore, MCL 330.1946(1) only modified a mental health professional's common-law duty to warn or protect a *third person* when a "threat as described in [MCL 330.1946(1)]" was communicated to the mental health professional because the statute only places a duty on mental health professionals to warn third persons of or protect them from the danger presented by a threat "as described" in MCL 330.1946(1).

9

This statutory duty only arises if three criteria are met: (1) a patient makes a threat of physical violence, (2) the threat is against a reasonably identifiable third person, and (3) the patient has the apparent intent and ability to carry out the threat. If these three criteria are not met, the mental health professional's duty under the statute is not triggered.[5] Thus, on its face, the statute does not completely abrogate

---

[5] After its enactment by 1989 PA 123, the Legislature amended MCL 330.1946(1) in 1995 PA 290. Before the 1995 amendments, MCL 330.1946(1) stated, in relevant part:

> If a patient communicates to a mental health practitioner who is treating the patient a threat of physical violence against a reasonably identifiable third person and the *patient* has the apparent intent and ability to carry out that threat in the foreseeable future, the mental health practitioner has a duty to take action as prescribed in [MCL 330.1946(2)]. [Emphasis added.]

"Recipient" is defined in MCL 330.1100c(12) as "an individual who receives mental health services from the department, a community mental health services program, or a facility or from a provider that is under contract with the department or a community mental health services program."

Arguably, changing the third use of "patient" in the preamendment statute to "recipient" in the current version of MCL 330.1946(1) limited the scope of a mental health professional's duty to warn under MCL 330.1946(1) to only threats made by *recipients* as defined in MCL 330.1100c(12). This change is only potentially significant when a "patient" who is not a "recipient" makes a threat that would otherwise trigger a mental health professional's duty under MCL 330.1946 to warn or protect a third person. Here, although Brooks was a "patient" who was not a "recipient," he did not make a threat against a "reasonably identifiable third person" and, therefore, could not have triggered defendants' duty under MCL 330.1946(1) to warn or protect a third person. As a result, even applying the pre-1995 version of the statute, defendants would not have had a duty to warn or protect third persons under MCL 330.1946(1). Thus, we will not consider the effect of the 1995 amendments here.

10

a mental health professional's separate common-law special relationship duty to protect his or her patients by exercising reasonable care.

We note that a mental health professional's patient could be a "third person" under MCL 330.1946(1). Therefore, MCL 330.1946 did abrogate that portion of a mental health professional's common-law duty to his or her patients that requires the mental health professional to warn one patient of threats by or protect that patient from a second patient to the extent that the statute applies, that is, when the second patient (1) makes a threat of physical violence, (2) the threat is against a reasonably identifiable third person (i.e., the first patient), and (3) the second patient has the apparent intent and ability to carry out the threat. MCL 330.1946(1). Under these limited circumstances, a mental health professional would only have a duty to his or her patient (in responding to the threat) to take the actions described in MCL 330.1946(2). Even in that situation, however, MCL 330.1946 would not abrogate the mental health professional's other common-law special relationship duties to his or her patients, i.e., duties unrelated to responding to such a threat.

This conclusion is reinforced by the fact that, unlike some other statutory schemes, the statutory language in MCL 330.1946(1) is not so comprehensive as to indicate that it is intended to completely abrogate the common law in this area. For example, in *Hoerstman Gen Contracting*, 474 Mich at 72-76, we held that the Legislature intended to completely abrogate the common law of accord and satisfaction when it enacted article 3 of the Uniform Commercial Code. In that

11

case we concluded that the statute completely abrogated the common law because the statute was "comprehensive" and it was "intended to apply to nearly every situation involving negotiable instruments." *Id.* at 74. Further, we noted that the statutory language "completely covers the details of accord and satisfactions." *Id*. Finally, we noted that the statute included exceptions to or conditions on the statute's application and concluded that "[t]heir enumeration eliminates the possibility of [there] being other exceptions under the legal maxim *expressio unius est exclusio alterius*."[6] *Id*. Because there was no exception or condition listed under which the common law of accord and satisfaction would apply, we concluded that the Legislature "clearly intended that the statute would abrogate the common law on this subject." *Id.* at 75.

In contrast, MCL 330.1946(1) is not comprehensive and does not cover all the details of a mental health professional's duty to provide reasonable care. In fact, the statutory language is expressly limited to warning or protecting third persons under very limited circumstances, i.e., when (1) a patient makes a threat of physical violence, (2) the threat is against a reasonably identifiable third person, and (3) the patient has the apparent intent and ability to carry out the threat. The statutory language never addresses a mental health professional's other common-law duties to his or her patients. Therefore, on its face, the statute only defines a

---

[6] "'The expression of one thing is the exclusion of another.'" *Hoerstman Gen Contracting*, 474 Mich at 74 n 8, quoting Black's Law Dictionary (7th ed), p 1635.

mental health professional's duty to warn or protect a third person from a "threat as described in [MCL 330.1946(1)]." Nothing in the statute indicates that the Legislature intended to completely abrogate a mental health professional's common-law special relationship duty to his or her patients. While it is true that a person may simultaneously be a "patient" and a "third party," that does not mean that only the statutory duty *or* the common-law duty could apply. Rather, both duties could apply if all the requirements to trigger the duties are met, or, as in this case, only one duty could apply. The statutory duty to warn or protect a third person was not triggered in this case because the threat was not a "threat as described in [MCL 330.1946(1)]." However, this does not mean that the common-law special relationship duty also did not apply. Therefore, MCL 330.1946 is not "intended to apply to nearly every situation" in which a mental health professional's duty to provide reasonable care may arise because it does not address a mental health professional's common-law special relationship duty to protect his or her patients in the absence of a "threat as described in [MCL 330.1946(1)]."[7] See *Hoerstman Gen Contracting*, 474 Mich at 74.

_____

[7] Indeed, as the Court of Appeals dissent noted, courts have held that a defendant may be held liable for harm caused by others if it was foreseeable that the defendant's own actions would lead to the infliction of harm by others. *Dawe*, 279 Mich App at 576-577 (SMOLENSKI, P.J., dissenting) (indicating, for example, that a defendant may be liable for harms inflicted by others who stole the defendant's car after he left the car unlocked with the keys inside and that a father who provided a loaded gun to his mentally ill son while the son was in an agitated state may be civilly liable for a murder committed by his son). Yet if MCL 330.1946(1) were interpreted to completely abrogate a mental health

We do not pass judgment on the merits of plaintiff's medical-malpractice claim on the facts of this case. Our holding is limited only to whether MCL 330.1946 abrogated all common-law duties owed by mental health professionals to their patients, which we hold it did not. Thus, there may be claims alleging a breach of a mental health professional's special relationship duty of reasonable care that are cognizable under Michigan law.

## IV. CONCLUSION

We hold that the Legislature did not intend to completely abrogate a mental health professional's common-law duty to his or her patients when it enacted MCL 330.1946. Thus, we reverse the judgment of the Court of Appeals. Further, we now consider defendants' pending application for leave to cross-appeal and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to cross-appeal, we remand

---

professional's common-law duty, mental health professionals would have no duty to protect others, including their patients, from harm that results from the mental health professional's own negligent handling of a patient in the absence of a "threat as described in [MCL 330.1946(1)]." *Id.* at 577.

this case to the Court of Appeals for consideration of the issues raised by defendants that were not addressed in its opinion because it found the issue under MCL 330.1946 determinative.[8]

Marilyn Kelly
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

---

[8] In particular, we direct the Court's attention to the jury instructions, which may not have properly distinguished between the statutory and common-law claims in this case.