# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF MICHAEL TRAVIS ERRETT, by
DEBORAH WHALEY, Independent
Administratrix,

        Plaintiff-Appellant,

v

A FOREVER RECOVERY, INC., and SAGE
SIMMONS,

        Defendants-Appellees,

and

STEPHEN ROBINSON, M.D.,

        Defendant.

UNPUBLISHED
May 30, 2017

No.   331521
Kent Circuit Court
LC No.   15-000457-NH

---

Before:  BECKERING, P.J., and MARKEY and SHAPIRO, JJ.

PER CURIAM.

      In this action alleging claims of medical and ordinary negligence, plaintiff Deborah Whaley, as independent administratrix for the Estate of Michael Travis Errett[1], appeals as of right the trial court's opinion and order granting summary disposition pursuant to MCR 2.116(C)(8) in favor of defendants, A Forever Recovery, Inc. ("AFR") and Sage Simmons.[2] Because the trial court did not err in granting summary disposition based on the wrongful-conduct rule, we affirm.

---

[1] Whaley was Travis Errett's mother.

[2] Defendant Stephen Robinson, M.D. was dismissed from this matter without prejudice by stipulation of the parties.

# I. PERTINENT FACTS

This case arises out Errett's attempt to overcome his drug addiction by seeking treatment at AFR. Errett, a Texas resident, was 23 years old when he died. He had been abusing various drugs since the age of 15. In 2008, he was hospitalized for detoxification at Baylor All Saints in Fort Worth, Texas. In 2009, Errett sought treatment for his chemical dependency at Sundown Ranch. At some point between his discharge from Sundown Ranch and his admission at AFR, Errett went to a drug rehabilitation facility called Harris Methodist Springwood. On April 27, 2011, he was arrested in Fort Worth, Texas, after being pulled over by police and admitting that he had cocaine and heroin.[3] On May 1, 2011, following his arrest, Errett sought treatment for heroin and cocaine addiction and was admitted to Texoma Medical Center Behavioral Health Center, where he stayed for "a couple weeks." At some point thereafter, Errett told Whaley that he had used drugs again and needed help. Whaley was going to take him to a rehab facility in San Antonio that had been recommended by their insurance company, but Errett did not want to go there because he did not want a traditional 12-step program as was offered at that facility.

Errett discovered AFR by looking on the Internet and making some telephone calls. He underwent inpatient rehabilitation treatment at AFR, located in Battle Creek, Michigan, from September 7, 2011 to December 4, 2011. After completing the program, he returned to Texas.

As part of its program, AFR provided "aftercare" support once a patient was discharged from the facility. The aftercare program involved regular contact between the AFR aftercare specialist, in this case Simmons, and Errett to provide support and encouragement in Errett's attempts to overcome his addiction. It is alleged here that Errett and Simmons developed a personal relationship that was outside the scope of the aftercare relationship, although it appears that this relationship occurred entirely via telephone, e-mails, and texts. There is no evidence that this relationship involved any physical contact between the two. On April 6, 2012, approximately four months after his discharge from AFR, Errett relapsed again and died of an overdose of cocaine and heroin.

Whaley later discovered the electronic communications between her son and Simmons. She sued defendants, raising theories of medical and ordinary negligence associated with the relationship that developed between Errett and Simmons. She sought to hold defendants accountable for Errett's death, alleging that the romantic relationship that developed caused Errett to be unable to receive appropriate counseling and support for his addiction, leading to his relapse and overdose. Defendants AFR and Simmons jointly moved the trial court for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted summary disposition to defendants pursuant to MCR 2.116(C)(8), limiting its consideration of defendants' motion to the

---

[3] Errett subsequently pleaded guilty to one count of possession of less than one gram of heroin and one count of possession of less than one gram of cocaine, both in violation of TEX. HEALTH & SAFETY, § 481.115(b). His adjudication was deferred, and he was placed on community supervision for a period of 3 years.

pleadings.[4]  The trial court held that because of Errett's illegal conduct of using cocaine and heroin, which was a proximate cause of his death and thus formed the basis of his estate's claimed injuries, the claim was barred by the common-law wrongful-conduct rule, and that neither exception to the wrongful-conduct rule applied under the circumstances.

## II. ANALYSIS

Whaley argues on appeal that the wrongful-conduct rule should not apply in this case for multiple reasons.  We disagree.

## A. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law.  In making this determination, the Court reviews the entire record to determine whether defendant was entitled to summary disposition." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

"A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the basis of the pleadings alone," and "[t]he motion must be granted if no factual development could justify the plaintiff's claim for relief." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013) (quotation marks and citation omitted).  "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012).

"Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).  A motion pursuant to MCR 2.116(C)(10) is reviewed "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008).  "The moving party must specifically identify the matters that have no disputed factual issues, and it has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440-441; 814 NW2d 670 (2012) (citations omitted).  "The party opposing the motion then has the burden of showing by evidentiary materials that a genuine issue of disputed material fact exists." *Id*.  "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

---

[4] The trial court recognized that defendants had not asserted the wrongful-conduct rule as an affirmative defense, but stated that it would have permitted defendants to amend their responsive pleadings to add such a defense pursuant to MCR 2.118(A)(2), which would have resulted in the same outcome.

## B. WRONGFUL-CONDUCT RULE

The Michigan Supreme Court explained the requirements, limitations, and exceptions relevant to application of the wrongful-conduct rule in the seminal case of *Orzel v Scott Drug Co*, 449 Mich 550; 537 NW2d 208 (1995). In *Orzel*, the injured party was John Orzel, who was addicted to Desoxyn, a prescription form of methamphetamine. *Id*. at 552, 554. He began using the drug by purchasing it from his co-workers. *Id*. at 554. He then began obtaining prescriptions for the drug and having the prescriptions filled at the defendant pharmacy, while also obtaining the drug from co-workers and other pharmacies. *Id*. at 554-555. Because of his excessive use of Desoxyn, Orzel developed amphetamine psychosis and paranoid schizophrenia, and he required hospitalization on more than one occasion. *Id*. at 555-556.

Orzel's guardian and other relatives brought a lawsuit against the defendant pharmacy. The plaintiffs claimed that the defendant had breached its common-law and statutory duties to Orzel by filling the prescriptions without asking for identification, without allowing an adequate amount of time between prescriptions, and for the improper purpose of "weight control" rather than the proper purpose of "obesity," and that this breach caused Orzel's addiction and resulting mental illness. *Id*. at 552-553. The defendant moved for summary disposition, which the trial court granted on the basis that Orzel's illegal conduct barred the plaintiffs' recovery. *Id*. at 557. This Court reversed the trial court, *Orzel v Scott Drug Co*, unpublished opinion per curiam of the Court of Appeals, issued December 14, 1993 (Docket No. 117270), the majority concluding that Orzel's illegal conduct "should not operate to bar the plaintiffs' claim and that comparative negligence principles should apply to determine the extent of their potential recovery." *Id*. The Michigan Supreme Court granted the defendant's application for leave to appeal this Court's judgment in order to determine, among other things, whether Orzel's illegal conduct barred the plaintiffs' claim. The Supreme Court held that it did. *Id*. at 577. In so doing, the Court explained the wrongful-conduct rule as follows:

> When a plaintiff's action is based, in whole or in part, on his own illegal conduct, a fundamental common-law maxim generally applies to bar the plaintiff's claim:
>
> > [A] person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party.
>
> When a plaintiff's action is based on his own illegal conduct, and the defendant has participated equally in the illegal activity, a similar common-law maxim, known as the "doctrine of in pari delicto" generally applies to also bar the plaintiff's claim:
>
> > [A]s between parties in pari delicto, that is equally in the wrong, the law will not lend itself to afford relief to one as against the other, but will leave them as it finds them.

-4-

We shall refer to these maxims collectively as the "wrongful-conduct rule." Michigan courts have long recognized the existence of the wrongful-conduct rule. [*Id*. at 558-559 (citations omitted; alterations in the original).]

The *Orzel* Court identified two "limitations" on the wrongful-conduct rule. *Id*. at 561, 564. First, a plaintiff's claim is not automatically barred under this rule merely because he engaged in illegal conduct when he was injured; rather, "[t]o implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute." *Id*. at 561. Second, "[f]or the wrongful-conduct rule to apply, a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damages."[5] *Id*. at 564.

The *Orzel* Court also identified two exceptions to the wrongful-conduct rule. *Id*. at 569, 570. First is the culpability exception, which "may apply where both the plaintiff and defendant have engaged in illegal conduct, but the parties do not stand in pari delicti." *Id*. at 569. Pursuant to this exception, a plaintiff who has engaged in serious illegal conduct that proximately caused the plaintiff's injuries,

> may still seek recovery against the defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted " 'under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age . . . .' " [*Id*. at 569 (citations omitted)].

The second exception is the statutory-basis exception, which may be implicated "where the statute that the plaintiff alleges the defendant violated allows the plaintiff to recover for injuries suffered because of the violation." *Id*. at 570.

Applying the facts to the law, the *Orzel* Court held that the wrongful-conduct rule barred the claims of Orzel and his relatives because all of the claims were based at least in part on Orzel's own illegal conduct. *Id*. at 577. The Court concluded that Orzel's repeated violations of the controlled substance act by obtaining, possessing, and using Desoxyn without a valid prescription was serious illegal conduct that justified application of the wrongful-conduct rule because there is serious harm and punishment involved with illegally using drugs, and

---

[5] The "wrongful conduct rule only applies if a plaintiff's wrongful conduct is a proximate cause of his injuries." *Cervantes v Farm Bureau Gen Ins Co*, 272 Mich App 410, 417; 726 NW2d 73 (2006), citing *Orzel*, 449 Mich at 564. "The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case." *Cervantes*, 272 Mich App at 417 (quotation marks and citations omitted). On the other hand, a plaintiff who has engaged in a wrongful act may be able to recover "if the wrongful act was a remote link in the chain of causation." *Id*., quoting *Manning v Bishop of Marquette*, 345 Mich 130, 137; 76 NW2d 75 (1956).

"transactions involving controlled substances are almost entirely prohibited." *Id*. at 562-563. The *Orzel* Court also concluded that Orzel's decision to illegally use Desoxyn in large quantities, causing him to suffer from mental illness, was a proximate cause of his injuries. *Id*. at 567. The court further reasoned that there was a causal connection between the illegal conduct and Orzel's injuries because the plaintiffs could not establish a cause of action for injuries resulting from the use of Desoxyn without relying on Orzel's illegal use of the drug. *Id*. at 568.

Next, the *Orzel* Court concluded that the culpability exception did not apply because, while both parties committed wrongful conduct, the two parties were equally at fault and "[b]oth parties played pivotal roles in making the illegal acts possible. *Id*. at 569-570. The Court further reasoned that the culpability exception should not be applied because it was the plaintiff "who, by his continuous illegal use of Desoxyn, caused himself to become both addicted and insane." *Id*. at 570. Finally, the *Orzel* Court concluded that the statutory-basis exception did not apply because Orzel did not " 'clearly' fall within the class of persons that the allegedly violated statutes were devised to protect"[6] because there was "no evidence to suggest that the Legislature intended to confer special protection on persons like [the plaintiff], who repeatedly and fraudulently engage in the illicit use of drugs." *Id*. at 574.

*Orzel* governs the resolution of the case at bar. It is undisputed that Errett died from an overdose of cocaine and heroin, and that the possession and use of these controlled substances is illegal under both Texas and Michigan law.[7] The illegal possession and use of controlled

---

[6] The plaintiffs alleged that the defendant violated MCL 333.17759 and MCL 333.16221(c)(*iv*), provisions of the Public Health Code that address pharmacists' duties regarding controlled substances. *Orzel*, 449 Mich at 573.

[7] Texas law prohibits and provides criminal penalties for the knowing or intentional possession of cocaine or heroin unless the person "obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice. TEX. HEALTH & SAFETY, § 481.102(2) and (3)(D), and § 481.115. Texas law also criminalizes the knowing or intentional use or possession with intent to use drug paraphernalia to inject controlled substances in to the human body. TEX. HEALTH & SAFETY, § 481.125(a).

Under Michigan law, a person who knowingly or intentionally possesses a schedule 1 or 2 controlled substance "that is a narcotic drug or a drug described in [MCL 333.] 7214(a)(*iv*)" in an amount less than 25 grams is "guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $25,000.00, or both." MCL 333.7403(1), (2)(a)(*v*). MCL 333.7404(1) provides that "[a] person shall not use a controlled substance or controlled substance analogue unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article." A person who violates MCL 333.7404(1) with respect to a schedule 1 narcotic drug or a schedule 2 drug described in section 7214(a)(*iv*) "is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both." MCL 333.7404(2)(a). Heroin is a schedule 1 controlled substance that is a narcotic drug. MCL 333.7212(1)(b); MCL 333.7107(a). Cocaine is a schedule 2 controlled substance described in MCL 333.7214(a)(*iv*).

substances, as occurred in the instant case, is the type of serious illegal conduct that warrants application of the wrongful-conduct rule. *Id*. at 562-564. Further, it is common knowledge that death is a foreseeable, natural, and probable result of taking an overdose of dangerous drugs such as cocaine and heroin. Consequently, Errett's illegal drug use was at least "a" proximate cause of his death. See *id*. at 566-567 (showing that a party's conduct is "a" proximate cause is sufficient); see also *Kaiser v Allen*, 480 Mich 31, 37-38; 746 NW2d 92 (2008) (defining proximate cause as "a foreseeable, natural, and probable cause of the plaintiff's injuries and damages"). Because Whaley's claim is based on Errett's relapse and resulting death from a drug overdose, there is a sufficient causal nexus between his illegal conduct and his death. *Orzel*, 449 Mich at 564. Thus, the requirements for applying the wrongful-conduct rule have been satisfied. *Id*. at 561, 564.

## C. ABROGATION

Whaley first contends that the common-law wrongful-conduct rule does not bar her claim because it was has been abrogated by the enactment of statutes establishing a system of comparative fault, specifically MCL 600.2957, MCL 600.2958, and MCL 600.6304(8). We disagree. Whether the Legislature has abrogated a common-law rule is a question of law that we review de novo. *Velez v Tuma*, 492 Mich 1, 5, 11; 821 NW2d 432 (2012). We also review statutory interpretation de novo. *Id*. at 11.

In 1995, the Legislature codified a system of comparative negligence through the enactment of MCL 600.2957, MCL 600.2958, and MCL 600.2959, and the amendment of MCL 600.6304.[8] 1995 PA 161; 1995 PA 249. This statutory system of comparative negligence requires triers of fact in actions "seeking damages for personal injury, property damage, or wrongful death" to allocate the liability of each person who contributed to the injury, including the plaintiff, "in direct proportion to the person's percentage of fault." MCL 600.2957(1). Accordingly, a plaintiff's contributory fault does not bar his or her recovery; it only reduces his or her economic damages, MCL 600.2958, and, in some instances, bars the recovery of noneconomic damages, MCL 600.2959.[9] MCL 600.6304(8) defined "fault" to include "an act, omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." Except as expressly provided for in sections 2957, 2958, and 2959, enactment of these sections did not "eliminate or diminish a defense or immunity" that existed at the time of the enactment. MCL 600.2957(3).

"The common law remains in force until 'changed, amended or repealed.' " *Velez*, 492 Mich at 11, quoting Const 1963, art 3, § 7. "The abrogative effect of a statutory scheme is a

---

[8] Our Supreme Court adopted the rule of comparative negligence in place of the doctrine of contributory negligence in 1979. *Placek v City of Sterling Heights*, 405 Mich 638, 650; 275 NW2d 511 (1979).

[9] Noneconomic damages are barred where the injured plaintiff's fault exceeds that of the aggregate fault of the other contributors to the plaintiff's injury. MCL 600.2959.

question of legislative intent, and legislative amendment of the common law is not lightly presumed." *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010) (quotation marks and citation omitted). "The first step in ascertaining legislative intent is to look at the words of the statute itself." *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006). "The Legislature is presumed to know of the existence of the common law when it acts," *id.* at 234, and "the Legislature should speak in no uncertain terms when it exercises its authority to modify the common law," *Dawe*, 485 Mich at 28 (quotation marks and citation omitted). We will not construe a statute "to abrogate established common-law principles by implication." See *Lee v Detroit Med Ctr*, 285 Mich App 51, 67; 775 NW2d 326 (2009).

In light of the applicable law, we conclude that the Legislature's passage of comparative negligence statutes in 1995 did not abrogate the wrongful-conduct rule. When the Legislature enacted the statutes relevant to comparative negligence, it knew that the common-law wrongful-conduct rule was "firmly embedded in [Michigan] jurisprudence. *Orzel*, 449 Mich at 576 n 29; *Wold*, 474 Mich at 233. None of the relevant statutes expressly changes, amends, or repeals the rule. See *Velez*, 492 Mich at 11. In fact, MCL 600.2957(3) ensures the rule's survival by stressing that codification of comparative negligence did not "eliminate or diminish" preexisting defenses or immunities. Thus, nothing in the language of the statutes clearly indicates the Legislature's intent to modify or nullify the wrongful-conduct rule, *Dawe*, 485 Mich at 28, and we decline to construe the statutes to abrogate the rule by implication, see *Lee*, 285 Mich App at 67.

Further evidence that enactment of the comparative negligence statutes in 1995 did not abrogate the wrongful-conduct rule is that this Court has continued to identify and treat the wrongful-conduct rule as a valid legal principle for the past 22 years. See, e.g., *Shelton v Auto-Owners Insurance Company*, __ Mich App ___; ___ NW2d ___ (Docket No. 328473, issued February 14, 2017), slip op at 8; *Omian v Chrysler Group, LLC*, 309 Mich App 297, 310-311; 869 NW2d 625 (2015); *Ward v Titan*, 287 Mich App 552, 556-557; 791 NW2d 488 (2010), overruled on other grounds *Admire v Auto-Owners Ins Co*, 494 Mich 10 (2010); *Cervantes*, 272 Mich App at 416-417; *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 88-91; 697 NW2d 558 (2005); *MCA Fin Corp v Grant Thornton, LLP*, 263 Mich App 152, 156-163; 687 NW2d 850 (2004); *Poch v Anderson*, 229 Mich App 40, 44-53; 580 NW2d 456 (1998); *Stopera v DiMarco*, 218 Mich App 565, 569-571; 554 NW2d 379 (1996). Moreover, albeit in dicta, our Supreme Court expressly recognized the wrongful-conduct rule's continuing validity:

> . . . [A] fleeing driver [in a police pursuit] would nevertheless be barred from seeking to recover for injuries sustained while attempting to evade a lawful order to stop his vehicle under Michigan's wrongful conduct rule. This rule is rooted in the public policy that courts should not lend their aid to plaintiffs whose cause of action is premised on their own illegal conduct. *Orzel v Scott Drug Co,* 449 Mich 550; 537 NW2d 208 (1995). Culpable passengers have no greater claim to benefit

from the wrongful conduct than does the driver." [*Robinson v City of Detroit*, 462 Mich 439, 452 n 10; 613 NW2d 307 (2000).][10]

Whaley further contends that, because the wrongful-conduct rule functions in the same way as contributory negligence to bar the claim of a plaintiff is who at fault for his injury, it is incompatible with a comparative fault system. We disagree. The wrongful-conduct rule and contributory negligence are not equivalent concepts. Under a contributory negligence system, a plaintiff's claim may be barred based on *any* negligent conduct by the plaintiff, *Hill v Hoig*, 258 Mich App 538, 541; 672 NW2d 531 (2003), while the wrongful-conduct rule only applies to bar a claim if the claim arose out of the serious illegal conduct of the injured party, *Orzel*, 449 Mich at 561. Minor illegal conduct will not even trigger the wrongful-conduct rule, *id.*, much less negligent conduct that is not serious illegal conduct. Thus, it does not follow that abolishing contributory negligence in favor of comparative negligence is necessarily equivalent to abolishing the wrongful-conduct rule.

## D. EXCEPTIONS TO THE WRONGFUL-CONDUCT RULE

Whaley next argues that, even if the Legislature did not abrogate the wrongful-conduct rule, the rule does not apply to bar these claims because both the culpability and the statutory-basis exceptions apply to the facts of this case. Again, we disagree.

As noted above, "a plaintiff may still seek recovery against the defendant if the defendant's culpability is greater than the plaintiff's culpability for the injuries, such as where the plaintiff has acted " 'under circumstances of oppression, imposition, hardship, undue influence, or great inequality of condition or age . . . .' " *Id*. at 569 (citations omitted). Other than citing the general principle that the culpability exception exists, Whaley cites no authority to support her argument that the culpability exception actually applies to facts analogous to the instant case. Whaley merely argues that Simmons's conduct in developing an inappropriate romantic relationship with Errett and AFR's failure to properly supervise her were worse than Errett's decision to use the illegal drugs, cocaine and heroin.[11] As previously stated, the *Orzel* Court explained, "[a]n exception to the wrongful-conduct rule may apply *where both the plaintiff and defendant* have engaged in *illegal* conduct, but the parties do not stand in pari delicto." *Id*. (emphasis added). Whatever the nature of the relationship that developed between Simmons and Errett, Whaley has not alleged that Simmons did anything *illegal*, while it is undisputed that Errett's illegal possession and use of drugs caused his death. Accordingly, the culpability exception does not apply.

---

[10] See also Michigan Non-Standard Jury Instr Civil §16.4, Thomson Reuters, August 2016 Update; *Effect of Wrongful Conduct*, 1 Mich Pl & Pr § 6.3 (2d ed) (August 2016 update); *Violation of Statute*, 1 Michigan Torts § 1.8 (May 2016 Update).

[11] There is no allegation that Simmons' relationship with Errett soured, or that it played any role in his conduct of abusing drugs other than depriving him of "proper" drug treatment aftercare.

Likewise, we conclude that the statutory-basis exception does not apply. As previously noted, under this exception, the plaintiff may still recover if "the statute that the plaintiff alleges the defendant violated allows the plaintiff to recover for injuries suffered because of the violation." *Id*. at 570. As the *Orzel* Court explained,

Statutes that permit certain classes of persons to recover do so either explicitly or implicitly. Where a statute explicitly authorizes persons similarly situated as the plaintiff to recover, then a problem does not arise, and the courts will simply permit the plaintiff to pursue his cause of action. Where the statute is silent regarding recovery, courts are left to infer whether the Legislature clearly intended persons similarly situated as the plaintiff to be entitled to seek recovery.

To determine whether a statute implies recovery for certain types of plaintiffs, courts often apply a test from the Second Restatement of Torts. The test has been referred to as the "statutory purpose doctrine."

The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results. [*Id*. at 570-571 (citations omitted).]

Whaley asserts that this exception applies based on an alleged violation of "the malpractice statutes (Ex. MCL 600.2912, MCL 600.5838a)." MCL 600.2912(1) provides that a person may bring a civil cause of action for medical malpractice against a person who is or holds "himself out to be a member of a stated licensed profession." MCL 600.2912 "is concerned with [the] legislative decision that the impostor and the duly licensed professional be held to the same standard of care." *Sam v Balardo*, 411 Mich 405, 422; 308 NW2d 142 (1981). In other words, "Section 2912 addresses itself exclusively to the problem of the empiric. [The] pseudo-professional is subject to suit in malpractice and is to be held to the same standard of care as the licensed professional he misrepresents himself to be." *Id*. (quotation marks and citation omitted). MCL 600.5838a discusses when medical malpractice claims accrue and should be brought.

It is not clear from Whaley's argument how the medical malpractice statutes that she cites create an exception to application of the wrongful-conduct rule. Indeed, Whaley cites no authority to support the argument that these statutes provide a cause of action despite Errett's

illegal conduct. Here, there is no specific conduct allegedly committed by defendants that is prohibited by the statutes that Whaley cites. The statutes cited by Whaley are not *penal* statutes because they do not define any specific punishments or transgressions, and Whaley has not cited any penal statutes that were violated by defendants. Moreover, the wrongful-conduct rule has been applied to bar medical malpractice claims predicated on injuries arising from the plaintiff's illegal conduct. See, e.g., *Glazier v Lee*, 171 Mich App 216, 217, 218, 220; 429 NW2d 857 (1988) (barring plaintiff's malpractice claim against his psychologist alleging that his psychologist provided professionally negligent treatment that caused the plaintiff to kill his girlfriend and resulted in emotional and psychological injuries to the plaintiff). Accordingly, the statutory-basis exception does not apply.

Finally, Whaley argues that the public policy reasons for applying the wrongful-conduct rule are not present in this case. In *Orzel*, the Court explained:

> The rationale that Michigan courts have used to support the wrongful-conduct rule are rooted in the public policy that courts should not lend their aid to a plaintiff who founded his cause of action on his own illegal conduct. If courts chose to regularly give their aid under such circumstances, several unacceptable consequences would result. First, by making relief potentially available for wrongdoers, courts in effect would condone and encourage illegal conduct. Second, some wrongdoers would be able to receive a profit or compensation as a result of their illegal acts. Third, and related to the two previously mentioned results, the public would view the legal system as a mockery of justice. Fourth, and finally, wrongdoers would be able to shift much of the responsibility for their illegal acts to other parties. As stated by the Court of Appeals, where the plaintiff has engaged in illegal conduct, it should be the plaintiff's own criminal responsibility which is determinative. [*Orzel*, 449 Mich at 559-560 (quotation marks and citation omitted).]

Whaley's argument is without merit. There is nothing in *Orzel* to suggest that these rationales are factors that must be specifically found to exist before the wrongful-conduct rule may be applied in a particular case. See *MCA Fin Corp*, 263 Mich App at 159 ("We begin by noting that the *Orzel* Court was explaining the rationale behind the wrongful-conduct rule and was not establishing a requirement that at least one of the four listed public policy concerns must be present in order to apply the rule."). Moreover, these public policy reasons support application of the wrongful-conduct rule in the instant case. The decedent chose to use cocaine and heroin, which ultimately resulted in his death.[12] Other than allegedly failing to provide

---

[12] Although we appreciate the fact that drug overdoses are the leading cause of accidental death in the United States, with 52,404 lethal drug overdoses in 2015 and opioid addiction driving this epidemic, carving out an exception from the wrongful-conduct rule for drug-addicted individuals is not going to solve the problem. See American Society of Addiction Medicine, *Opioid Addiction*, http://www.asam.org/docs/default-source/advocacy/opioid-addiction-disease-facts-figures.pdf (accessed May 8, 2017). We also note that if a drug-addicted person's injury arises

competent addiction treatment aftercare, as alleged by plaintiff, defendants played no role in Errett's decision to engage in illegal activity, something they were trying to help him prevent. It would be a "mockery of justice" to shift the blame of a person relapsing and engaging in illegal drug use to those treating the drug-addiction, and would condone illegal drug use. See *Orzel*, 449 Mich at 559-560. Whaley argues that Errett will not be benefitting from his actions because he is deceased. However, "[b]ecause an action for wrongful death is derivative in that the representative of the deceased stands in the latter's shoes, plaintiff, as the personal representative of the decedent's estate, has no better claim than the decedent would have had himself." *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 88 n 10; 697 NW2d 558 (2005).

## III. CONCLUSION

Based on the foregoing, we conclude that the trial court properly applied the wrongful-conduct rule to bar this claim. Defendants moved for summary disposition under MCR 2.116(C)(10), and both parties submitted additional evidence. In reaching our conclusion, we have considered the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Accordingly, we conclude that summary disposition was proper under MCR 2.116(C)(10), rather than MCR 2.116(C)(8), because there is no genuine issue regarding any material fact and defendants are entitled to judgment as a matter of law. *West*, 469 Mich at 183. *Detroit News, Inc v Policemen & Firemen Retirement Sys of City of Detroit*, 252 Mich App 59, 66; 651 NW2d 127 (2002) ("If summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart.") (quotation marks and citation omitted).

Having concluded that summary disposition was proper pursuant to the common-law wrongful-conduct rule, we decline to address defendants' alternative argument concerning MCL 600.2955b.

Affirmed.

/s/ Jane M. Beckering
/s/ Jane E. Markey
/s/ Douglas B. Shapiro

out of negligent medical care, rather than the person's own relapse, there may not be a sufficient causal nexus to apply the wrongful-conduct rule; this case, however does not entail such a situation.