MANNING v. BISHOP OF MARQUETTE.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—BINGO—DEFECTIVE PRIVATE SIDEWALK.

  Plaintiff who had been a participant in an evening bingo game upon defendant's premises *held*, entitled to recover for injuries sustained when she fell into a hole on the premises, near where the private walk joined the public walk, there being evidence of defendant's negligence and plaintiff's freedom from contributory negligence sufficient to take the case to the jury which viewed the scene.

· REFERENCES FOR POINTS IN HEADNOTES
38 Am Jur, Negligence §§ 344, 345.

Appeal from Marquette; Jackson (Glenn W.), J. Submitted January 11, 1956. (Docket Nos. 69, 70, Calendar Nos. 46,674, 46,675.)    Decided April 2, 1956.

Case by Lucille A. Manning against Bishop Thomas L. Noa, Catholic Bishop of Marquette and trustee of St. Peter's Cathedral, for damages for personal injuries resulting from fall on property following bingo game. Similar action by Malcolm A. Manning for wife's medical expense and other damages. Cases consolidated for trial and appeal. One verdict and judgment in both cases for plaintiffs. Defendant appeals. Affirmed.

*Baldwin & Kendricks,* for plaintiffs.

*Eldredge & McDonald,* for defendant.

SMITH, J. This is not an easy case. The difficulty arises from the fact that the plaintiff, though grievously injured, is said to be a law violator, whose turpitude bars her from recovery. She had, in truth, been playing bingo at Cathedral Hall, St. Peter's Cathedral, in Marquette. She was injured while leaving the church property, and was awarded damages. Her case is analogized to that of a woman aborted who sought to recover damages from the doctor, *Nash* v. *Meyer,* 54 Idaho 283 (31 P2d 273) ; to that of a participant in a fist fight suing his adversary, *Galbraith* v. *Fleming,* 60 Mich 403; and to that involving the consort of a strumpet, who, having lost his wallet, sued the hotel, alleging that he came within the statutory definition of a "guest," *Curtis* v. *Murphy,* 63 Wis 4 (22 NW 825, 53 Am Rep 242). We have meditated long on the case. A rogue does not appeal to our conscience. Yet even a rogue may have

a cause of action and so, *a fortiori,* may Mrs. Manning, who is no rogue.

In more detail, this was the situation: On Tuesday, May 23, 1950, Mrs. Manning, a resident of the city of Marquette, at about 7:15 p.m., went to St. Peter's Cathedral to attend a bingo game regularly sponsored by the church. It is estimated that approximately 400 persons were in attendance at the game on this particular evening. The game was open to the public and the cards necessary for playing were available for the price of $1 each. About 10:15 p.m. the game was concluded and plaintiff, along with the rest of the crowd, left the hall. (The exit consisted of double doors, illuminated on the outside by an ornamental light fixture above and to the right of the doors as one leaves the building.) Plaintiff came out of the left side of the right-hand door and walked toward the left on the private walk in preparation to turning left where it joins the public sidewalk. The night was dark and plaintiff was in the middle of a crowd. As she walked along in this company and in the darkness, she "stepped into this hole" and fell to the ground, sustaining serious injuries.

Action was brought against Bishop Thomas L. Noa, of Marquette, individually and as trustee of St. Peter's Cathedral. Upon motion granted below, the Bishop in his individual capacity was dismissed as a party defendant and he appears here as Bishop of the Diocese, holding title to the premises as trustee for St. Peter's Cathedral Parish and, as conceded, the person who "individually or through his agents, employees and assigns, operated St. Peter's Cathedral." The action so brought was in tort, and was based upon the negligence of defendant in failing to maintain "the walkways and means of egress from the premises in a reasonably safe condition." In the one case (No. 46,674) plaintiff Lucille A. Manning

claims damages for personal injuries sustained as
a result of her fall and in the other (No. 46,675) her
husband sues for damages for medical expenses, loss
of services and consortium. (Since the husband's
action is controlled by decision in his wife's case we
shall hereafter refer only to Lucille A. Manning as
plaintiff.)

Defendant has taken a general appeal from a
judgment for plaintiff, entered upon the jury's ver-
dict and from the trial court's denial of his motion
for a directed verdict made at the conclusion of plain-
tiff's case. Execution was stayed upon the filing of
a certified copy of the insurance policy. Since this
appeal is directed only to the trial court's failure to
direct a verdict at the close of plaintiff's proofs, our
decision will be based on the status of the proofs and
pleadings at the time the motion was made, *Hilliker*
v. *Jewel Oil & Gas Co.,* 277 Mich 615 (rehearing),
and all legitimate inferences from plaintiff's testi-
mony will be construed as strongly as possible in
plaintiff's favor. *Turnbull* v. *Roseland Park Ceme-
tery Association,* 341 Mich 677; *Bennett* v. *Hill,* 342
Mich 754.

Our doors are open to both the virtuous and the vil-
lainous. We do not, however, lend our aid to the
furtherance of an unlawful project, nor do we decide,
as between 2 scoundrels, who cheated whom the
more. Rarely, indeed, are such cases brought before
us, possibly from the result of the highwayman's
case, reported in 2 Evans', Pothier on Obligations
(3d Am ed), pp 2, 3:

"There is a tradition that a suit was instituted by
a highwayman against his companion to account for
his share of the plunder, and a copy of the proceed-
ings has been published as found amongst the papers
of a deceased attorney. It was a bill in the Ex-
chequer, which avoided stating in direct terms the
criminality of the engagement, and is founded upon

a supposed dealing as copartners in rings, watches, et cetera, but the mode of dealing may be manifestly inferred. The tradition receives some degree of authenticity, by the order of the court being such as would in all probability ensue from such an attempt. The order was, that the bill should be dismissed with costs for impertinence, and the solicitor fined 50£. The printed account is accompanied by a memorandum which states the particular times and places where the plaintiff and defendant were afterwards executed. Europ Mag, 1787, vol 2, p 360 (a)."

Whether or not the case is suppositious, it well illustrates a general principle. For more modern discussion see *Piechowiak* v. *Bissell,* 305 Mich 486, involving a charge of malicious prosecution by one of the parties to a criminal conspiracy against the other.

Inasmuch as the bearing of asserted illegality of plaintiff's actions upon a recovery for tort is involved, a problem involving complex considerations of individual and public morality, we deem it prudent to point out that our opinion is narrowly circumscribed. We have not a case of "splitting up the loot," *i.e.,* an action for the conversion of property obtained under an illegal contract. Nor do we have the case where the defendant was acting in concert with plaintiff, for here defendant is charged only with negligence. We are not, moreover, faced with the case in which plaintiff was injured during her participation in an unlawful act, such as rioters injuring one another in the general turmoil. In all such cases the plaintiff must prove the illegal transaction in order to make out his case. But in the case at bar the game is over. The evening has come to a close and the day's pursuits, wicked or pure, are over. The plaintiff is proceeding by normal means of egress, and, it is asserted, in the exercise of due care, towards her domicile, when she is hurt while

still on the church premises.  Will the action lie?  Or
is it to be barred by the evil range of the evening's
activities?  That is to say, is this properly a case
where recovery cannot be had because of the unlaw-
ful act of the plaintiff, which was a contributing
cause of the damage suffered?

Assuming, but not deciding, that, as Mrs. Manning
abandoned her evening's diversions and started for
home, she still wore a halo of illegality, or, as de-
fendant puts it, still "was tarred with the illegal
transaction," is she outside the law, precluded from
recovery?  We find no warrant for the position.  It
goes too far.  In order to have such effect an unlawful
act must be one which the law recognizes as having a
causal connection with the injury complained of.  If
the unlawful act was merely collateral to the cause
of action sued upon, and did not proximately con-
tribute to the injury, recovery is not barred.  52 Am
Jur, Torts, § 92.  A moment's reflection will confirm
the justice of the rule.  A passenger on a railroad
train should be able to recover for the negligence of
his carrier, resulting in the train's derailment and his
injury therefrom, even though he was swearing like
a trooper at the time he was hurt, in direct violation
of CL 1948, § 466.10 (Stat Ann § 22.269), which for-
bids the utterance of profane language in the hear-
ing of other passengers on a railroad train.  Would
his case be weaker if he were on his way home from
hunting deer out of season?  Was Mrs. Manning's
prior bingo game a substantial causal factor?  We
must, and do, distinguish between legal or proximate
cause and cause in a philosophical sense.  As Dean
Prosser puts it (Prosser on Torts [1st ed], p 312):

"In a philosophical sense, the consequences of an
act go forward to eternity, and the causes of an event
go back to the discovery of America and beyond.
'The fatal trespass done by Eve was cause of all our
woe.'  But any attempt to impose responsibility

upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' "

Consistent with the foregoing was the decision of the Connecticut court in *Bagre* v. *Daggett Chocolate Co.*, 126 Conn 659 (13 A2d 757), that plaintiff was not barred from her action for injuries arising from her biting into a hard metallic substance in a piece of candy, even though the box of candy had been won at a bingo game. There was (p 665) "absence of any causal relation between this illegal act and the injury." Similar in principle is our decision in *Van Auken* v. *Chicago & West Michigan R. Co.*, 96 Mich. 307 (22 LRA 33), wherein a traveler on the Sabbath recovered for injuries received because of the railroad's negligence.

The principles described above are well stated by the Mississippi court in *Meador* v. *Hotel Grover*, 193 Miss 392, 405, 406 (9 So2d 782), in the following words:

"For a plaintiff to be barred of an action for negligent injury under the principle of public policy implicit in the maxim *ex dolo malo non oritur actio,* his injury must have been suffered while and as a proximate result of committing an illegal act. The unlawful act must be at once the source of both his criminal responsibility and his civil right. The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. Where the violation of law is merely a condition and not a contributing cause of the injury, a recovery may be permitted. (Citing cases.)

"The mere status of a plaintiff as a lawbreaker at the time of his injury is not sufficient of itself to bar him from resort to the courts. With respect to the particular act out of which the injury arose, his right to invoke the power of the law to protect can be neutralized only by the power of the law to punish. Be-

fore he can be held *in pari delicto* with defendant he must first be *in delicto*. Regardless of the propriety for a private or public condemnation of one for a moral delinquency, matters which affect his personal character or reputation are no concern of the courts in their examination of his rights as a litigant. Plaintiff by his conduct did not place himself outside the law. He is not *caput lupinum*. 4 Black Comm 320. Even illegality as such is but an abstraction and of itself neither causes injury nor creates disability. The status of the deceased as a violator of the law is thus made an irrelevant inquiry."

It is not enough, then, to bar a plaintiff's recovery, that some illegal act be a remote link in the chain of causation.

But, defendant also urges upon us, the illegality complained of infects as well the matter of plaintiff's status on the property itself. We should not, as defendant puts it, "permit plaintiff to use her own illegal conduct as a foundation of her claim that she was on defendant's premises as an invitee, without which status her case falls." In support of the argument we are cited to the Canadian case of *Danluk v. Birkner* [Ontario], (1946) 3 DLR 172. In this case plaintiff was in a gambling establishment operated by the defendant. An alarm buzzer sounded, indicating a police raid. Plaintiff ran to a door, unhooked the latch, threw it open, and hurriedly escaped from the building. Unfortunately, there were no stairs leading to the ground from this particular door. It opened onto nothing. Plaintiff was seriously injured. In reversing an award of damages, the Ontario court of appeal held, in part, that plaintiff "has not the status in law of an invitee" because, it said, the business (in connection with which the invitation onto the premises is extended) must be a lawful business. Denied, also, was his status as a licensee. "The court

will not take cognizance of that which the parties may say was the 'consent' given by the occupier," since it involved " 'consent' to the frequenter committing the crime." (p 177)

The reasoning thus set forth we cannot accept. It confuses the fact of consent or invitation with the purpose for which it was given. The editorial note prefacing the report of the case in (1946) 3 DLR, *supra,* presents a well-reasoned criticism of the opinion, commenting, in part, as follows:

"The main grounds on which the court supports its judgment raise an issue of first impression in this country so far as negligence actions are concerned. Heretofore our courts have not denied recovery to a plaintiff whose conduct might involve criminal or penal consequences; *e.g.,* where he has been injured in a collision while engaged in dangerous driving; or where he has been driving without a license. Why should the criminal liability of the plaintiff in the present case be any more a ground for denying recovery? Presumably, the court would have allowed recovery if the plaintiff had been a plumber called in to do repairs. But suppose he had placed a bet or had entered with that purpose? There is another forum for punishing criminal or penal acts, and to afford the present defendant immunity is to offer him the same subsidy that is granted charitable organizations in some jurisdictions."

Research, however, discloses that the case was not allowed to remain so ruled. The supreme court of Canada, *Danluck* v. *Birkner and Cassey,* (1947) SCR 484 ([1947] 3 DLR 337), examined the matter, and, although approving the result below (on the theory that even if plaintiff were an invitee to whom a duty was owed by the occupiers, their duty did not, in the circumstances, extend to the manner of making his exit) was careful to point out that "we must

not be taken as approving the grounds upon which the court below proceeded." No more do we.

With the elimination of the defenses revolving around the illegalities charged, there is little left to the appeal. There was an abundance of testimony to take the case to the jury, involving the allegedly dangerous condition of the premises (a view of which had been moved and granted, as a part of plaintiff's case), the conditions of illumination, plaintiff's freedom from contributory negligence, and other necessary elements of her recovery. There was no error in submitting the case to the jury.

Affirmed. Costs to appellee.

SHARPE, REID, and BLACK, JJ., concurred with SMITH, J.

DETHMERS, C. J., and BOYLES, KELLY, and CARR, JJ., concurred in the result.