******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD LASTRINA, CONSERVATOR (ESTATE OF
DANIEL LASTRINA) *v.* EVELYN BETTAUER
(AC 44509)

RICHARD LASTRINA, CONSERVATOR (ESTATE OF
DANIEL LASTRINA) *v.* BRUCE E. BURNHAM
(AC 44510)

Bright, C. J., and Cradle and Suarez, Js.

*Syllabus*

The plaintiff, as conservator of the estate of his son D, sought to recover
damages from the defendants, B and E, for medical malpractice in
connection with their treatment of D. D used marijuana on a regular
basis and, anticipating that his employer may administer random drug
tests, decided to obtain a medical marijuana certificate based on a
diagnosis of post-traumatic stress disorder (PTSD), even though D did
not believe that he suffered from that condition. D scheduled an appoint-
ment with B, a physician, to obtain the medical marijuana certificate.
B referred D to E, a psychologist, who diagnosed D with PTSD based
on D's misrepresentations. B accepted E's diagnosis and provided D
with a medical marijuana certificate. D proceeded to use medical mari-
juana every day and, after approximately two weeks, stopped taking
his medication for his bipolar disorder. Thereafter, D was hospitalized
due to a manic episode and was later discharged to a facility to partici-
pate in a marijuana dependent rehabilitation program. The plaintiff
alleged that the defendants violated the applicable standards of care
for their respective professions and that, as a result of the defendants'
negligence, D suffered from adverse consequences caused by his use
of medical marijuana, including exacerbation of D's bipolar disorder and
hospitalization. Each defendant filed a motion for summary judgment,
claiming that the wrongful conduct rule, which serves as a limitation
on liability in civil actions premised on the notion that a plaintiff should
not recover for injuries that are sustained as the direct result of his or
her knowing and intentional participation in a criminal act, and public
policy barred the plaintiff's actions. The trial court granted the motions,
finding that D's conduct in purposely deceiving the defendants to obtain
certification for medical marijuana constituted a violation of the statute
(§ 21a-266) that prohibits the acquisition of a controlled substance by,
inter alia, fraud, and was a felony pursuant to statute (§ 21a-255). Accord-
ingly, the trial court held that it would violate public policy to impose
a duty on the defendants to protect D from the consequences of his
own admitted illegal conduct. On the plaintiff's appeal to this court, *held*:

1. The trial court properly granted the defendants' motions for summary
judgment as that court correctly found that there was no genuine issue
of material fact as to whether a sufficient causal nexus existed between
D's misrepresentations to the defendants and his injuries to preclude
recovery: it was undisputed that D intentionally lied to the defendants
to obtain a PTSD diagnosis so that he could purchase medical marijuana,
that the plaintiff's sole claim was that D's injuries were caused by his
use of the medical marijuana that he illegally obtained, and that D's
conduct constituted a violation of § 21a-266 (a) and that such violation
constituted a felony pursuant to § 21a-255 (c), and, accordingly, D's
illegal conduct was therefore intertwined with the alleged negligent
treatment by the defendants because that treatment was simply part of
and resulted from D's fraud, and, to the extent that D suffered injuries
from his use of medical marijuana, those injuries occurred because D,
after his encounters with the defendants, engaged in the further voli-
tional criminal conduct of going to a medical dispensary and fraudulently
obtaining marijuana.

2. The trial court correctly concluded that no genuine issue of material fact
existed as to whether D's conduct amounted to "serious criminality": the
wrongful conduct rule has been limited to cases in which the plaintiff's
injuries stem from conduct that is prohibited, as opposed to merely
regulated, by law, and the violation is serious or involves moral turpitude,

the plaintiff conceded that D's conduct in seeking to obtain medical marijuana by fraud constituted an unclassified felony, and, on appeal, the plaintiff presented no meaningful argument in support of his claim that a genuine issue of material fact existed as to whether D's conduct amounted to serious criminality.

Argued November 2, 2022—officially released February 14, 2023

*Procedural History*

Action, in each case, to recover damages for medical malpractice, brought to the Superior Court in the judicial district of Hartford, where the court, *Cobb, J.*, granted the motion for summary judgment filed by the defendant in each case and rendered judgment thereon, from which the plaintiff filed separate appeals to this court. *Affirmed.*

*Gerald S. Sack*, for the appellant in each case (plaintiff).

*Laura E. Waltman*, with whom, on the brief, was *Jonathan A. Kocienda*, for the appellee in Docket No. AC 44509 (defendant).

*William F. Corrigan*, for the appellee in Docket No. AC 44510 (defendant).

*Opinion*

BRIGHT, C. J. In these medical malpractice actions, the plaintiff, Richard Lastrina, as conservator of the estate of his son Daniel Lastrina (Daniel), appeals from the judgments of the trial court granting the motions for summary judgment filed by the defendants, Evelyn Bettauer, a psychologist, and Bruce E. Burnham, a physician. The court granted summary judgment for each defendant, concluding that it would violate public policy to impose a duty on the defendants to protect Daniel from the harm caused by his own illegal conduct. On appeal, the plaintiff claims that the court improperly granted summary judgment for the defendants because there are genuine issues of material fact as to whether Daniel's illegal conduct (1) caused his injuries and (2) constituted "serious criminality." We disagree and, accordingly, affirm the judgments of the trial court.

The record, viewed in the light most favorable to the plaintiff as the nonmoving party, reveals the following facts and procedural history. In the summer of 2008, after his freshman year of college, Daniel began using marijuana and continued to use marijuana regularly over the following years. Daniel suffers from bipolar disorder and was hospitalized on several occasions between 2011 and 2017, due to episodes of depression and mania. Since 2012, Daniel has been prescribed various medications to treat his condition.

In his deposition, Daniel explained that, in April, 2017, he wanted a medical marijuana certificate "so that if [his employer] drug tested [him] at work, [he] wouldn't get fired." In pursuit of that goal, he reviewed the list of debilitating medical conditions[1] that qualify for medical marijuana use and decided that, although he did not suffer from any of those conditions, he could convince a doctor that he had post-traumatic stress disorder (PTSD). He scheduled an appointment with Burnham and falsely reported that he had been traumatized by his prior admissions to mental health facilities related to his bipolar disorder and that he continued to suffer from that trauma.[2] He also told Burnham that he had used marijuana regularly without any adverse consequences.

After meeting with Daniel, Burnham referred him to Bettauer, who met Daniel that same day. Daniel repeated his misrepresentation to Bettauer, and she diagnosed him with PTSD. Burnham accepted Bettauer's diagnosis and provided Daniel with a medical marijuana certificate. Daniel proceeded to use medical marijuana every day and, after approximately two weeks, stopped taking his medication for his bipolar disorder. On October 9, 2017, Daniel was hospitalized due to a manic episode and thereafter was discharged to Silver Hill Hospital to participate in a marijuana dependent rehabilitation program.

After the plaintiff was appointed conservator of Daniel's estate in November, 2017, he initiated separate medical malpractice actions against the defendants.[3] The plaintiff alleged that Bettauer violated the applicable standard of care for psychologists by, among other things, improperly diagnosing Daniel with PTSD. In the Burnham action, the plaintiff alleged that Burnham deviated from the applicable standard of care for physicians certifying patients for the use of medical marijuana in several ways, including that he relied on Bettauer's diagnosis of PTSD and prescribed medical marijuana for Daniel when Burnham knew that Daniel suffered from bipolar disorder and had experienced negative consequences from the use of marijuana. In each case, the plaintiff alleged that, due to the defendants' violations of the respective standards of care, Daniel suffered from adverse consequences resulting from his use of medical marijuana, including exacerbation of Daniel's bipolar disorder and hospitalization. The two cases were consolidated for purposes of discovery.

Bettauer filed an answer and special defenses in which she denied any negligence and asserted, inter alia, that the plaintiff's claims were barred because Daniel's injuries were sustained due to his own wrongful conduct. Burnham filed an answer leaving the plaintiff to his proof.

Each defendant filed a motion for summary judgment, claiming that, pursuant to *Greenwald* v. *Van Handel*, 311 Conn. 370, 88 A.3d 467 (2014), the wrongful conduct rule and public policy barred the plaintiff's actions.[4] The wrongful conduct rule serves as "a limitation on liability in civil actions premised on the notion that a plaintiff should not recover for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act." (Internal quotation marks omitted.) *Burke* v. *Mesniaeff*, 334 Conn. 100, 122 n.9, 220 A.3d 777 (2019). In *Greenwald*, our Supreme Court concluded that it was unnecessary to adopt "any sweeping rule or exceptions thereto" because it was clear based on the facts alleged by the plaintiff that "it would violate public policy to impose a duty on the defendant to protect the plaintiff from the injuries arising from the legal consequences of his admitted illegal conduct." *Greenwald* v. *Van Handel*, supra, 374. In the present cases, the defendants argued in their motions for summary judgment that the rationale of *Greenwald* applies with equal force to bar the plaintiff's claims because any injuries Daniel suffered were the result of his admitted illegal conduct.

The plaintiff filed objections to the motions for summary judgment. In his memoranda of law in support of the objections, the plaintiff asserted that there was a genuine issue of material fact as to whether Daniel's conduct was a "serious felony," which he argued was

not the case. The plaintiff also argued that there was a genuine issue of material fact as to causation. The plaintiff attached to his memoranda affidavits from similar health care providers who opined that the defendants' deviations from the standards of care—not Daniel's misrepresentation—caused Daniel to be misdiagnosed with PTSD, which caused his injuries.[5]

The court held a remote hearing on the motions for summary judgment on December 7, 2020. On December 11, 2020, the court filed a memorandum of decision granting the defendants' motions. Although the court noted that our Supreme Court had declined to adopt fully the wrongful conduct rule in *Greenwald*, it found that the general principles addressed in *Greenwald* concerning wrongdoing were applicable to the present cases. The court determined that Daniel's conduct in purposely deceiving the defendants to obtain certification for medical marijuana constituted a felony. The court explained that such conduct violated General Statutes § 21a-266 (a),[6] which prohibits the acquisition of a controlled substance[7] "by fraud, deceit, misrepresentation or subterfuge," and that a violation of § 21a-266 (a) is a felony pursuant to General Statutes § 21a-255 (c).[8] Accordingly, the court rejected the plaintiff's claim that there was a genuine issue of material fact as to whether Daniel's conduct constituted a "serious felony." The court also rejected the plaintiff's claim regarding causation, concluding that "Daniel's injuries were not independent of his admitted criminal acts, but caused by them." Accordingly, the court held that it would violate public policy to impose a duty on the defendants to protect Daniel from the consequences of his own admitted illegal conduct. The plaintiff filed motions to reconsider and/or reargue, which the court denied. These appeals followed.[9]

As a preliminary matter, we first set forth the applicable standard of review. "On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . [O]ur review is plenary and we must decide whether the [trial court's] conclusions are legally and logically correct and find support in the facts that appear on the record. . . .

"Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .

"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving party has presented evidence in support of the motion for

summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." (Internal quotation marks omitted.) *Streifel* v. *Bulkley*, 195 Conn. App. 294, 299–300, 224 A.3d 539, cert. denied, 335 Conn. 911, 228 A.3d 375 (2020).

In addition, we note that "[t]he existence of a duty is a question of law . . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, 306 Conn. 578, 589, 50 A.3d 802 (2012).

I

The plaintiff first claims that the court improperly granted the defendants' motions for summary judgment because there is a genuine issue of material fact as to whether a sufficient causal nexus exists between Daniel's misrepresentation to the defendants and his injuries to preclude recovery.[10] Thus, although whether a duty exists is a question of law, the plaintiff contends that application of the wrongful conduct rule in the present cases depends on a disputed factual issue regarding causation. We are not persuaded.

We begin our analysis with a review of *Greenwald* v. *Van Handel*, supra, 311 Conn. 370, in which our Supreme Court discussed the wrongful conduct rule and its application. In that case, a plaintiff filed a professional negligence action against a defendant, a licensed clinical social worker, for failing to treat him in connection with his viewing of child pornography as a minor. Id., 372. In his complaint, the plaintiff alleged "that the defendant's failure to address his forays into child pornography when he was a minor led to his continued viewing of child pornography and his home being raided and searched by the police. The plaintiff further alleged that, as a consequence of the defendant's negligence, he has spent, and will be required to continue to spend, large sums of money on professional mental health care for his recovery and maintenance." Id., 373. The trial court granted the defendant's motion to strike the complaint on the ground that it would violate public policy to allow the plaintiff to profit from his own criminal acts and rendered judgment for the defendant. Id., 374. On appeal, the plaintiff claimed that Connecticut had not adopted a wrongful conduct rule and that, assuming such a rule applies, our Supreme Court should adopt certain exceptions to the rule recognized by the Michigan Supreme Court. Id., 372, 382.

In rejecting the plaintiff's claims, our Supreme Court explained that it has "recognized the common-law maxims that [n]o one shall be permitted to profit by his

own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, [and] have their foundation in universal law administered in all civilized countries . . . .

"Many of our sister states . . . have extended these principles to tort actions. The generally articulated common-law wrongful conduct rule in these jurisdictions provides that a plaintiff cannot maintain a tort action for injuries that are sustained as the direct result of his or her knowing and intentional participation in a criminal act. . . .

"The jurisdictions extending this rule to tort actions have set certain limitations on its application. Courts in many of these states have limited the rule's application to cases in which the plaintiff's injuries stem from conduct that is prohibited, as opposed to merely regulated, by law, and the violation is serious or involves moral turpitude. . . . In addition, courts have universally recognized that there must be a sufficient causal nexus between the plaintiff's illegal conduct and his alleged injuries to bar recovery. . . .

"Although courts have had difficulty drawing these lines in some cases, the present case causes no such problems. The plaintiff has admitted to conduct that constitutes a serious felony, and such conduct has a direct causal connection to his alleged injuries. Accordingly, there is no question that he would be barred from recovering under this rule . . . ." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 376–80.

Ultimately, our Supreme Court concluded that, "irrespective of whatever limits might be imposed by the wrongful conduct rule, it is clear . . . that it would violate the public policy of our state to impose a duty on the defendant to protect the plaintiff from injuries arising from the legal consequences of the plaintiff's volitional criminal conduct, unlawful viewing and downloading of child pornography. Under the theory of recovery advanced by the plaintiff, the more serious the criminal conduct, and the more severe the attendant punishment, the greater his recovery would be. It is self-evident why such a result would contravene public policy. Moreover, [t]he fundamental policy purposes of the tort compensation system [namely] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . would not be met by imposing such liability on the defendant.

"In reaching this conclusion, we underscore that we do not hold that the defendant did not have a duty to exercise reasonable care in his treatment of the plaintiff. Indeed, if the plaintiff sustained injuries independent of the legal consequences of his criminal acts as

a result of the defendant's negligent treatment of his underlying mental condition, the wrongful conduct rule would have no application. The door of a court is not barred because the plaintiff has committed a crime. . . . The court's aid is denied only when he who seeks it has violated the law *in connection with the very transaction as to which he seeks legal redress.*  Then aid is denied despite the defendant's wrong. It is denied in order to maintain respect for law; in order to promote confidence in the administration of justice; in order to preserve the judicial process from contamination." (Emphasis in original; internal quotation marks omitted.) Id., 385–86; see also *Jarmie* v. *Troncale*, supra, 306 Conn. 599.

In further defining the limits of its holding, our Supreme Court explained that, because the plaintiff did not claim that he lacked criminal responsibility for his illegal conduct, it had "no occasion to consider whether a plaintiff could recover for injuries arising from nonvolitional criminal conduct. We simply conclude that injuries arising from volitional criminal conduct cannot, as a matter of public policy, provide a basis for recovery." Id., 387 n.10.

In the present cases, the plaintiff claims that *Greenwald* should be limited to its facts. He seizes on the court's qualification in *Greenwald* that, "if the plaintiff sustained injuries independent of the legal consequences of his criminal acts as a result of the defendant's negligent treatment . . . the wrongful conduct rule would have no application." Id., 386. The plaintiff claims "[t]hat is precisely the case here" and argues that Daniel's false "statements are irrelevant to the diagnosis, and there is no direct causal link between the statements of [Daniel] and the diagnosis of PTSD." The plaintiff contends that, based on the affidavits of his expert witnesses, there are genuine issues of material fact as to whether Daniel's misrepresentation supported a diagnosis of PTSD and whether Daniel sustained injuries independent of the legal consequences of his criminal acts due to the defendants' negligent diagnosis and treatment. Therefore, according to the plaintiff, he is entitled to a trial at which the fact finder can consider his evidence that the causal nexus between Daniel's illegal conduct and his alleged injuries is insufficient to bar recovery.

The defendants respond that, based on the submissions made in connection with the motions for summary judgment, Daniel's injuries are, as a matter of law, directly connected to his admitted illegal conduct, and, therefore, the court properly granted summary judgment on the basis of public policy. We agree with the defendants.

Although the qualification in *Greenwald* on which the plaintiff relies, standing alone, might suggest that our Supreme Court limited application of the wrongful

conduct rule to injuries arising from the *legal* consequences of a plaintiff's wrongful conduct, we do not read *Greenwald* so narrowly. Nor does the plaintiff claim that *Greenwald* should be read so narrowly. See footnote 10 of this opinion. The context of that statement is important.

In *Greenwald*, the plaintiff only sought damages that arose from the search of his home related to his continued viewing of child pornography almost two years after the defendant stopped treating him. *Greenwald* v. *Van Handel*, supra, 311 Conn. 372–73. In particular, he alleged that, as a result of the search, he faced the possibility of arrest and conviction and "being sentenced to a term of imprisonment, serving a period of probation, registering as a sex offender in the state's sex offender registry for an indeterminate period of time and suffering the humiliation, publicity, embarrassment and economic repercussions associated with being arrested and/or convicted of downloading, viewing and/ or possessing child pornography." *Greenwald* v. *Van Handel*, Conn. Supreme Court Records & Briefs, October Term, 2013, Pt. 1, Record p. 6. Thus, the court was faced only with a claim for damages arising out of criminal conduct that the plaintiff engaged in after he ceased treatment with the defendant. The court held that permitting the plaintiff to pursue a claim against the defendant for the consequences of his volitional criminal conduct would violate public policy. *Greenwald* v. *Van Handel*, supra, 311 Conn. 385. At the same time, the court also recognized that the plaintiff would not have been precluded from pursuing a claim for injuries resulting from the defendant's negligent treatment that were not the consequence of his subsequent illegal conduct. Id., 386. Put differently, the illegality of the condition for which a patient seeks treatment does not affect the duty of care a medical professional owes to a patient.

For example, a medical professional treating a patient for an opioid addiction owes the same duty of care to the patient regardless of whether the patient obtained the opioids legally or illegally. Society has an interest in treating the patient's addiction, whatever its cause, and in ensuring that medical professionals providing such treatment do so to the applicable standard of care. For that reason, if a patient suffers injuries related to his addiction, such as hospitalizations or worsening health, due to the doctor's breach of that duty of care, the wrongful conduct rule would have no application to claims stemming from such injuries. On the other hand, if the patient commits a robbery to obtain money to buy more opiates and suffers injuries arising from his arrest, the wrongful conduct rule would apply to preclude that patient from recovering for injuries arising from the robbery, regardless of whether the addiction that led him to commit the robbery was the result of illegal conduct. This reasoning is consistent with

the public policy of encouraging individuals to seek treatment for illegal behavior, while not permitting an individual who has chosen to continue to engage in criminal conduct to shift the blame for that conduct to others.

Thus, the court's qualification in *Greenwald* as to the legal consequences of criminal acts, on which the plaintiff relies, must be understood in light of the particular claim asserted by the plaintiff in *Greenwald* and in the context of the court's other statements regarding when illegal conduct bars recovery as a matter of public policy. In this regard, the court first noted that it "has recognized the common-law maxims that [n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." (Internal quotation marks omitted.) Id., 376. Our Supreme Court cited two cases in which it had applied these principles, and neither of those cases involved injuries arising from the legal consequences of criminal conduct. Id., 377; see also *Thompson* v. *Orcutt*, 257 Conn. 301, 316, 777 A.2d 670 (2001) (concluding "that the fraud committed by the plaintiff in the bankruptcy court implicates an important public interest that justifies the application of the doctrine of unclean hands on public policy grounds"); *Solomon* v. *Gilmore*, 248 Conn. 769, 791, 731 A.2d 280 (1999) (holding that mortgage loan issued in violation of statutory licensing requirement was unenforceable on public policy ground).

Furthermore, the court in *Greenwald* determined that "[t]he fundamental policy purposes of the tort compensation system [namely] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . would not be met by imposing such liability on the defendant." (Citation omitted; internal quotation marks omitted.) *Greenwald* v. *Van Handel*, supra, 311 Conn. 385–86.

Applying the principles endorsed by the court in *Greenwald* to the undisputed facts of the present cases, we conclude that the plaintiff's claims fail as a matter of public policy. Daniel did not seek treatment from the defendants for a condition from which he suffered. To the contrary, he misrepresented to the defendants that he suffered from PTSD when he knew that he did not. It is undisputed that his conduct constituted a violation of § 21a-266 (a) and that the violation constituted a felony pursuant to § 21a-255 (c). Thus, Daniel's illegal conduct was intertwined with the alleged negligent treatment by the defendants because that treatment was simply part of and resulted from Daniel's fraud. Furthermore, the plaintiff's criminal conduct did not end with his acquisition of the medical marijuana certificate but continued each time he obtained mari-

juana from a medical dispensary using the certificate he fraudulently had obtained. See General Statutes § 21-266 (a) ("[n]o person shall obtain or attempt to obtain a controlled substance or procure or attempt to procure the administration of a controlled substance . . . by fraud, deceit, misrepresentation or subterfuge"). Although the plaintiff seeks to limit Daniel's illegal conduct to his fraud in inducing the diagnosis of PTSD, this is not a case in which the defendants handed Daniel marijuana after he lied to them. Instead, to the extent Daniel suffered injuries from his use of medical marijuana, those injuries occurred because Daniel, after his encounters with the defendants, engaged in the further volitional criminal conduct of going to a medical dispensary and fraudulently obtaining marijuana. For this reason, Daniel cannot be described as an innocent party. He played a central role in causing his claimed injuries.

Our conclusion is consistent with decisions from other states, which we turn to in light of the scarcity of relevant decisions in Connecticut. *Price* v. *Purdue Pharma Co.*, 920 So. 2d 479 (Miss. 2006), on which Burnham relies, is instructive. In that case, a plaintiff brought an action against various defendants, including several doctors who had prescribed him the painkiller OxyContin. Id., 481–82. The plaintiff asserted medical malpractice claims against the doctor defendants, claiming that he suffered injuries from ingesting the drug. Id. The defendant doctors moved for summary judgment pursuant to the wrongful conduct rule, and the plaintiff, in opposing the motions, claimed only that the defendant doctors breached the applicable standard of care. Id., 483. The trial court granted summary judgment for the defendant doctors, and the plaintiff appealed. Id.

On appeal, the Supreme Court of Mississippi affirmed the judgment. The court noted that, "if the plaintiff is a lawbreaker at the time of his injury, that alone is not enough to bar the plaintiff from recovery. . . . The injury must be a proximate result of committing the illegal act. . . . The injury must be traceable to his own breach of the law and such breach must be an integral and essential part of his case. . . . The question is not merely when the wrongdoing was done, but what resulted from it. . . . [I]f a plaintiff actually requires essential aid from his own illegal act to establish a claim, he has no case." (Citations omitted; internal quotation marks omitted.) Id., 485.

Applying these principles, the court reasoned that the plaintiff "absolutely requires the essential aid from his own misdeeds to establish his claim. His violation of the law is not merely a condition, but instead an integral and essential part of his case and *the* contributing cause of his alleged injury." (Emphasis in original.) Id. The court emphasized that "[t]he undisputed fact remains that [the plaintiff] obtained a controlled sub-

stance through his own fraud, deception, and subterfuge by misrepresenting his medical history and ongoing treatment to those from whom he sought care. This offense is the central point to every claim on which he rested his already tenuous case, which therefore now completely collapses." Id., 486. Accordingly, the court held "that the wrongful conduct rule in Mississippi prevents a plaintiff from suing caregivers, pharmacies, and pharmaceutical companies and laboratories for addiction to a controlled substance which he obtained through his own fraud, deception, and subterfuge." (Internal quotation marks omitted.) Id.

Similarly, in *Orzel* v. *Scott Drug Co.*, 449 Mich. 550, 537 N.W.2d 208 (1995), a plaintiff brought a negligence action against a defendant, a pharmacy, alleging that the defendant was negligent in filling the plaintiff's prescriptions for Desoxyn, "a trade name for the chemical methamphetamine, [which] is a schedule 2 controlled substance . . . ." Id., 552. The defendant failed to confirm the plaintiff's identity when filling prescriptions that were written for individuals other than the plaintiff, and it filled the prescriptions too frequently. Id., 569. The jury returned a verdict for the plaintiff, but the trial court granted the defendant's motion for judgment notwithstanding the verdict on the ground that the plaintiff's illegal acts of obtaining the drug without a valid prescription barred his claims. Id., 557. On appeal, the Supreme Court of Michigan had little difficulty concluding that the plaintiff's "illegal conduct is of the type that warrants application of the wrongful-conduct rule. By his own admissions, as well as that of his counsel, [the plaintiff] repeatedly violated several provisions of the controlled substances act when he obtained, possessed, and used Desoxyn without a valid prescription." (Footnotes omitted.) Id., 562–63. The court then addressed the plaintiff's argument that the wrongful conduct rule was inapplicable because his illegal conduct was not the cause of his injuries. Specifically, he argued that, after years of abusing Desoxyn, he was legally insane when he interacted with the defendant, thereby excusing what otherwise would be illegal conduct. Id., 566. The court rejected this claim, concluding that "the illegal conduct that [the plaintiff] engaged in while he was sane served as 'a' proximate cause of his asserted injuries. . . .

"[The plaintiff's] use of Desoxyn while he was sane cannot be characterized as a separate transaction from his use while he was insane, because his initial consumption of the drug inevitably led to this subsequent use while he was insane. Consequently, any injuries that are a direct result of his use while he was insane are also foreseeable consequences of his use while he was sane.

"The [plaintiff] inadvertently concede[s] the significant causal relationship between [his] use of Desoxyn

while he was sane and his injuries insofar as [he] cannot establish [his] cause of action without relying on it: [the plaintiff's] use of Desoxyn while he was sane directly and proximately caused the insanity that [he] insist[s] excuses portions of his illegal conduct, and, in turn, precludes application of the wrongful-conduct rule. In other words, [the plaintiff's] use of Desoxyn while he was sane is an integral and essential part of [his] case. . . . [Thus, the plaintiff's] use of Desoxyn while he was sane serves as a proximate contributing cause of his asserted injuries." (Citation omitted; internal quotation marks omitted.) Id., 567–68.

Notably, although the court found that the defendant's conduct "was seriously blameworthy"; id., 569; it determined that none of the limitations or exceptions to the wrongful conduct rule applied and, therefore, that the plaintiff's claims were barred because they were "based, at least in part, on [the plaintiff's] illegal conduct." Id., 577.

The same reasoning applies in the present cases, where the plaintiff's claims arise from Daniel's illegal conduct in obtaining a controlled substance through fraud. On the basis of the submissions presented to the court in connection with the motions for summary judgment, there is no genuine issue of material fact that Daniel intentionally lied to the defendants to obtain a PTSD diagnosis so that he could purchase medical marijuana and that the plaintiff's sole claim is that Daniel's injuries were caused by his use of the medical marijuana that he illegally obtained. Given these undisputed facts, we reject the plaintiff's characterization of Daniel's injuries as independent of, or collateral to, his illegal conduct. Indeed, the record does not give rise to a genuine dispute as to whether the injuries the plaintiff alleges resulted from Daniel's abuse of a controlled substance are connected to obtaining that controlled substance by fraud—that is precisely the risk created by such conduct. Furthermore, the defendants' alleged medical malpractice—misdiagnosing Daniel with PTSD and certifying him for medical marijuana— is exactly the result that Daniel sought to accomplish through his illegal conduct. In other words, Daniel achieved the outcome he desired through his fraud and suffered injuries as a result. Thus, just as in *Price* and *Orzel*, Daniel's "violation of the law is not merely a condition, but instead an integral and essential part of his case and *the* contributing cause of his alleged injury." (Emphasis in original.) *Price* v. *Purdue Pharma Co.*, supra, 920 So. 2d 485; see also *Orzel* v. *Scott Drug Co.*, supra, 449 Mich. 568–69 (plaintiff's conduct in illegally obtaining and abusing controlled substance "serve[d] as a proximate contributing cause of his . . . injuries" and thereby satisfied "the causation limitation under the wrongful-conduct rule").

Furthermore, the plaintiff's reliance on the opinions

of similar health-care providers opining that the defendants caused Daniel's injuries is misguided. As our Supreme Court explained in *Greenwald*, the wrongful conduct rule applies "only when he who seeks [the court's aid] has violated the law *in connection with the very transaction as to which he seeks legal redress. Then aid is denied despite the defendant's wrong.*" (Emphasis altered; internal quotation marks omitted.) *Greenwald* v. *Van Handel*, supra, 311 Conn. 386. The rule is based on "the public policy consideration that the courts should not lend assistance to one who seeks compensation under the law for injuries resulting from his own acts when they involve a substantial violation of the law . . . . It simply means that proof of such an injury would not demonstrate any cause of action cognizable at law." (Internal quotation marks omitted.) Id., 385. Therefore, in considering whether the wrongful conduct rule applies, the focus of the analysis is on the plaintiff's conduct to determine whether the plaintiff "violated the law *in connection with the very transaction as to which* [*the plaintiff*] *seeks legal redress.*" (Emphasis in original; internal quotation marks omitted.) Id., 386. As our Supreme Court concluded, "injuries arising from volitional criminal conduct cannot, as a matter of public policy, provide a basis for recovery." Id., 387 n.10. Because there is no genuine issue of material fact as to whether the plaintiff's alleged injuries arose from Daniel's volitional criminal conduct, his claims against the defendants are barred even if the defendants were negligent.

The plaintiff nevertheless directs our attention to an unpublished opinion from the Court of Appeals of Michigan, in which the court, discussing the causal requirement, explained that "an exception to the wrongful conduct rule exists where the wrongful conduct is only collaterally or incidentally connected to the cause of action so that the plaintiff may prove his case without relying on the wrongful conduct. . . . Similarly, an exception to the rule exists where the illegal conduct is merely a condition and not a contributing cause of the injury and where the plaintiff's illegal conduct does not give rise to both his cause of action and his criminal responsibility." (Citation omitted.) *Marks* v. *Childress*, Docket No. 192638, 1997 WL 33330917, *2 (Mich. App. December 30, 1997).

The plaintiff fails to discuss the facts involved in *Marks* and, instead, simply states in conclusory fashion that "[t]his is the case here, given that the plaintiff's experts have concluded that a diagnosis of PTSD should not have been made based on Daniel's false statements and that the actual cause of Daniel's injuries was [the] defendants' deviation from the standard of care in their management of his care, independent of the false statements. . . . Here, [Daniel's] false statements are not the basis of his cause of action; rather, it was medical malpractice by the defendants in their decision to cer-

tify him for medical marijuana without adequate grounds to do so, including the conduct[ing] of an adequate investigation." We are not persuaded.

In *Marks*, approximately one month after a plaintiff stole a gun from a car, a defendant accidentally shot the plaintiff with the stolen gun. *Marks* v. *Childress*, supra, 1997 WL 33330917, *1. The plaintiff brought a negligence action against the defendant, and the trial court rendered judgment for the defendant pursuant to the wrongful conduct rule. Id. On appeal, the court held that the wrongful conduct rule did not apply, reasoning that "[b]eing shot is a risk of being around any weapon, not a risk that either arises from or is increased by the gun's stolen status." Id., *2. The court determined that "the theft was only collaterally or incidentally connected to [the] plaintiff's negligence action and [the] plaintiff could theoretically prevail on his claim without ever mentioning from where the gun came. In other words, the gun's stolen status was only a condition and not a contributing cause of [the] plaintiff's injury and, although the theft gives rise to [the] plaintiff's criminal responsibility, it did not give rise to his cause of action against [the] defendant." Id.

The present cases are distinguishable from *Marks*. First, the plaintiff alleges that the defendants were negligent in diagnosing Daniel with PTSD and in treating him for that condition, all of which occurred during his criminal act of attempting to obtain a controlled substance by fraud. Thus, the defendants' alleged negligence occurred during the commission of the illegal act in the present cases, whereas the plaintiff in *Marks* was injured approximately one month after he stole the gun during an incident unrelated to the theft.[11] Second, unlike the plaintiff's theft of the gun in *Marks*, which the court noted did not create or increase the risk of being shot, Daniel's wrongful conduct in the present cases—lying to the defendants to convince them that he suffered from PTSD so that he could obtain medical marijuana and then illegally obtaining medical marijuana—undoubtedly created the risk that Daniel would suffer injuries as a result of his volitional illegal conduct. Contrary to the plaintiff's suggestion, Daniel's fraud was not merely incidental to the defendant's alleged malpractice. His false statements to the defendants and his subsequent use of the illegally obtained medical marijuana are the factual underpinnings of his malpractice claims. Given these factual distinctions, *Marks* is of little assistance in the present cases.

The plaintiff also claims that "[s]imilar reluctance in using the wrongful conduct rule to bar a recovery can be found in *Manning* v. *Noa*, 345 Mich. 130, 76 N.W.2d 75 (1956), *Cahn* v. *Copac*, *Inc.*, 198 So. 3d 347 (Miss. App. 2015), [cert. denied, 202 So. 3d 613 (Miss. 2016)], *Tug Valley Pharmacy, LLC* v. *All Plaintiffs Below in Mingo County*, 235 W. Va. 283, 773 S.E.2d 627 (2015)

(rejecting wrongful conduct rule), and *Buono* v. *Valentino*, Superior Court, judicial district of New Haven, Docket No. CV-19-6094043-S (July 21, 2020) (70 Conn. L. Rptr. 123).

"Given these authorities, and the record before this court, the *Greenwald* ruling should be limited to its facts and not relied on to bar plaintiff's pursuit of legitimate medical malpractice claims in this case."

Although the plaintiff fails to apply these authorities to the facts presented here, we briefly address their import. In *Manning* v. *Noa*, supra, 345 Mich. 132–33, a plaintiff attended an illegal bingo game at a church and was injured after the game had ended when she fell in a hole while leaving the premises. A jury awarded her damages, and the defendant appealed, claiming that the plaintiff's illegal conduct precluded her recovery. Id., 133, 137. The Supreme Court of Michigan disagreed, concluding that the illegal bingo game was incidental to her injuries because, at the time of her injury, "[t]he evening ha[d] come to a close and the day's pursuits, wicked or pure, [were] over." Id., 134. The court reasoned that, although the plaintiff was on the premises to attend the illegal bingo game, it was not sufficient "that some illegal act be a remote link in the chain of causation." Id., 137.

Similarly, in *Buono* v. *Valentino*, supra, 70 Conn. L. Rptr. 123, a plaintiff brought a premises liability action against a defendant, alleging that he fell due to unsafe changes in the grade along the edge of a driveway coupled with inadequate lighting. As a special defense, the defendant claimed that the plaintiff's action was barred by the wrongful conduct rule because the plaintiff was on the premises to purchase marijuana from one of the tenants living there. Id. The plaintiff moved to strike the special defense, arguing that there was no causal nexus between his illegal conduct and his injuries. Id. The trial court granted the motion to strike, concluding that "[t]he plaintiff's illegal activity merely served as an occasion for the injury, as opposed to being a proximate contributing cause of [the plaintiff's] asserted injuries." (Internal quotation marks omitted.) Id., 125.

Both *Manning* and *Buono* involved premises liability claims, and the plaintiffs' illegal conduct was the reason for their presence on the premises but did not alter their status as invitees. Indeed, in the present cases, if Daniel had fallen while walking into or out of the defendants' offices due to a defective stair or walkway, there would be no connection between his illegal conduct and his injuries aside from explaining his presence at the location. That, however, is not the case here. Daniel's criminal purpose was to be misdiagnosed with PTSD so that he could obtain and use medical marijuana, and the plaintiff alleges that the cause of his injuries was being misdiagnosed with PTSD and permitted to use medical marijuana. Thus, unlike the illegal

bingo game in *Manning* or the illegal sale of marijuana in *Buono*, Daniel's illegal conduct is directly connected to his injuries. Simply put, there is nothing incidental about Daniel's illegal conduct with regard to his injuries.

Next, in *Cahn* v. *Copac, Inc.*, supra, 198 So. 3d 349, a decedent had been admitted to a defendant drug treatment facility for his addiction to alcohol and prescription medications. The decedent stole Suboxone from a physician's office at the facility and subsequently died from an overdose of the drug. Id., 353. The plaintiffs brought a wrongful death action against the treatment facility, a physician, and two nurses, alleging that the defendants were negligent in treating the decedent after they knew that he had ingested Suboxone and that the defendants' negligent or criminal acts in storing and dispensing Suboxone caused the decedent's death. Id., 361–63. The trial court rendered summary judgment for the defendants pursuant to the wrongful conduct rule. Id., 351.

On appeal, the Mississippi Court of Appeals reversed the judgment, holding that the wrongful conduct rule did not preclude the plaintiffs' medical malpractice and negligence claims. Id., 365. Central to the court's holding was its conclusion that the defendant treatment facility had assumed a duty of care to the decedent to guard against the foreseeable risk that a patient who was a drug addict would attempt to obtain and abuse controlled substances. Id., 361. The court reasoned that the defendants were "paid to assist and treat [the decedent] to help him overcome his drug addiction. . . . It is foreseeable that patients for prescription-drug abuse will attempt to secure prescription drugs if possible, and the defendants had a duty to legally possess Suboxone, to properly and securely store Suboxone, and to restrict access to Suboxone from patients at [the treatment facility]. Here, [the decedent's] death resulted from his addiction to and known propensity to abuse prescription drugs, the very reason he was placed in [the defendants'] care to begin with." Id., 364–65.

In the present cases, however, Daniel was not under the defendants' care for drug abuse. Had that been the case and had the defendants facilitated Daniel's access to additional drugs, our analysis would be different. Instead, Daniel lied to the defendants to induce a diagnosis that would allow him to acquire a controlled substance by fraud. Consequently, as previously noted, the present cases are more analogous to *Price* v. *Purdue Pharma Co.*, supra, 920 So. 2d 479, in which the Mississippi Supreme Court applied the wrongful conduct rule to bar recovery, than they are to *Cahn*.

Last, in *Tug Valley Pharmacy, LLC* v. *All Plaintiffs Below in Mingo County*, supra, 235 W. Va. 283, multiple plaintiffs brought an action against several pharmacies and physicians alleging that the defendants negligently

prescribed controlled substances for the plaintiffs, causing the plaintiffs to become addicted to the controlled substances. On a certified question from the trial court, the West Virginia Supreme Court of Appeals declined to adopt the wrongful conduct rule and held "that a plaintiff's immoral or wrongful conduct does not serve as a common law bar to his or her recovery for injuries or damages incurred as a result of the tortious conduct of another. Unless otherwise provided at law, a plaintiff's conduct must be assessed in accordance with [West Virginia's] principles of comparative fault." Id., 292. Our Supreme Court, however, reached a contrary conclusion in *Greenwald*. Specifically, the court held: "[W]e agree with other jurisdictions that have concluded that the mere availability of common-law or statutory comparative negligence, which permits a plaintiff to recover even if his own negligence contributed to his injuries; see General Statutes § 52-572h (b); does not negate application of the wrongful conduct rule." *Greenwald* v. *Van Handel*, supra, 311 Conn. 384.

In sum, Daniel, by his own admission, accomplished his criminal purpose when he obtained medical marijuana by lying to the defendants and suffered injuries due to his use of the medical marijuana he wrongfully acquired through his criminal deception. Accordingly, we agree with the trial court that the undisputed facts establish a direct causal connection between Daniel's injuries and his illegal conduct.

## II

The plaintiff also claims that a genuine issue of material fact exists as to whether Daniel's conduct amounted to "serious criminality." We are not persuaded.

As previously noted in this opinion, the wrongful conduct rule has been limited "to cases in which the plaintiff's injuries stem from conduct that is prohibited, as opposed to merely regulated, by law, and the violation is serious or involves moral turpitude." (Internal quotation marks omitted.) *Greenwald* v. *Van Handel*, supra, 311 Conn. 378.

In *Orzel* v. *Scott Drug Co.*, supra, 449 Mich. 561, the Supreme Court of Michigan explained that "[t]he mere fact that a plaintiff engaged in illegal conduct at the time of his injury does not mean that his claim is automatically barred under the wrongful-conduct rule. To implicate the wrongful-conduct rule, the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute. . . .

"In contrast, where the plaintiff's illegal act only amounts to a violation of a safety statute, such as traffic and speed laws or requirements for a safe workplace, the plaintiff's act, while illegal, does not rise to the level of serious misconduct sufficient to bar a cause of action by application of the wrongful-conduct rule."

In the present cases, the court reasoned that "[t]he

*plaintiff admits that Daniel's conduct constituted a felony* but asserts that, under *Greenwald*, his conduct must be a 'serious' felony and that there is a disputed issue as to whether Daniel's conduct was 'serious.' . . . In describing the requisite nature of the plaintiff's conduct in *Greenwald*, [our] Supreme Court used a number of words and phrases including 'serious felony,' but also 'illegal,' a 'criminal act,' 'illegal conduct,' 'wrongful,' 'conduct that is prohibited,' 'immoral,' 'felonious conduct,' and 'serious criminality.' . . . The court in the present case finds that [Daniel's] conduct meets all of these descriptions, and the undisputed admitted facts establish that his conduct was serious." (Citations omitted; emphasis added.)

On appeal, the plaintiff argues that, "[a]lthough the trial court found Daniel's conduct to amount to serious criminality, it also clearly admits that the undisputed admitted facts merely establish that his conduct was serious. Serious misconduct and serious criminality are different standards. Given that *Greenwald* requires serious criminality before the wrongful conduct rule can be applied, the trial court erred in applying the wrongful conduct rule to this case when the undisputed admitted facts establish only that Daniel's conduct was serious." (Internal quotation marks omitted.) We are not persuaded.

As noted by the trial court, the plaintiff conceded that Daniel's conduct in seeking to obtain medical marijuana by fraud constituted a felony, albeit an unclassified one. For that reason, the court addressed the only disputed point—whether that felony was "serious" for purposes of applying the wrongful conduct rule. On appeal, however, the plaintiff offers no argument as to why Daniel's illegal conduct was not "serious" and, instead, appears to concede this point by arguing that "the undisputed admitted facts establish only that Daniel's conduct was serious." (Internal quotation marks omitted.)

Given that the plaintiff presents no meaningful argument in support of his claim that a genuine issue of material fact exists as to whether Daniel's conduct amounted to serious criminality, we decline to construct one on his behalf. See *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 337, 50 A.3d 841 (2012) ("this court will not make arguments on behalf of parties that have declined to make any"), cert. denied, 569 U.S. 918, 133 S. Ct. 1809, 185 L. Ed. 2d 812 (2013). Nonetheless, we note that courts in other jurisdictions have upheld the application of the wrongful conduct rule where the illegal conduct at issue involved violations of the state's controlled substances act. See *Orzel* v. *Scott Drug Co.*, supra, 449 Mich. 561–64 (holding application of wrongful conduct rule appropriate where plaintiff illegally obtained and used controlled substance); see also *Price* v. *Purdue Pharma*

*Co.*, supra, 920 So. 2d 485–86 (holding that wrongful conduct rule applied where plaintiff illegally obtained and used prescription painkiller OxyContin). Thus, given that there is no genuine issue of material fact that Daniel's conduct in fraudulently obtaining medical marijuana constituted a violation of § 21a-266 (a) and that such a violation constitutes a felony pursuant to § 21a-255 (c), we have no difficulty concluding that Daniel's violation of this state's controlled substances act warrants application of the wrongful conduct rule.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] General Statutes (Rev. to 2021) § 21a-408 (3) provides in relevant part: " 'Debilitating medical condition' means (A) cancer, glaucoma, positive status for human immunodeficiency virus or acquired immune deficiency syndrome, Parkinson's disease, multiple sclerosis, damage to the nervous tissue of the spinal cord with objective neurological indication of intractable spasticity, epilepsy or uncontrolled intractable seizure disorder, cachexia, wasting syndrome, Crohn's disease, [post-traumatic] stress disorder, irreversible spinal cord injury with objective neurological indication of intractable spasticity, cerebral palsy, cystic fibrosis or terminal illness requiring end-of-life care . . . or (B) any medical condition, medical treatment or disease approved for qualifying patients by the Department of Consumer Protection pursuant to regulations adopted under section 21a-408m . . . ."

[2] Daniel understood PTSD to be caused by "traumatic events in your life that cause you to relive them in your mind."

[3] The plaintiff brought the first action against Bettauer in August, 2018, and the second action against Burnham in February, 2019.

[4] As an alternative ground for summary judgment, Burnham asserted that the plaintiff is unable to prove causation because Daniel's deposition testimony established that his access to medical marijuana was not the cause of his injuries. Because the court held that the plaintiff's action was barred as a matter of public policy, the court did not consider this alternative claim. On appeal, Burnham renewed his causation claim as an alternative ground for affirming the judgment of the trial court. Because we conclude that the court properly granted summary judgment on public policy grounds, we do not consider the merits of Burnham's alternative claim.

[5] In the Bettauer action, the plaintiff submitted an affidavit from a clinical psychologist, Kathleen Cairns, who opined that "the cause of the harm and damage done to [Daniel] was a misdiagnosis of [PTSD] which was erroneously made by [Bettauer]. . . . Whatever [Daniel] may have told [Bettauer] to convince her to diagnose him with PTSD was not the reason for her professional deviations from the standard of care." In the Burnham action, the plaintiff submitted an affidavit from a psychiatrist, Deepak Cyril D'Souza, who opined that "Burnham's deviations from the standard of care . . . are the reasons Daniel was wrongfully diagnosed with PTSD and permitted to purchase medical marijuana, not anything that Daniel may or may not have told him about his past medical history."

[6] General Statutes § 21a-266 provides in relevant part: "(a) No person shall obtain or attempt to obtain a controlled substance or procure or attempt to procure the administration of a controlled substance (1) by fraud, deceit, misrepresentation or subterfuge . . . .

"(b) Information communicated to a practitioner in an effort unlawfully to procure a controlled substance, or unlawfully to procure the administration of any such substance, shall not be deemed a privileged communication."

[7] In 2017, when Daniel sought a diagnosis from the defendants, marijuana was classified as a schedule II controlled substance under the Connecticut controlled substance scheduling regulations. See General Statutes (Rev. to 2017) § 21a-243 (e); see also Regs., Conn. State Agencies § 21a-243-8 (g) (November 5, 2015).

[8] General Statutes § 21a-255 (c) provides: "Any person who violates any provision of sections 21a-243 to 21a-282, inclusive, for which no penalty is expressly provided, (1) for a first offense, may be fined not more than three thousand five hundred dollars or imprisoned not more than two years, or be both fined and imprisoned, and (2) for any subsequent offense, shall be

guilty of a class C felony."

[9] While these appeals were pending, the plaintiff filed a motion for articulation in both actions, which the court denied. The plaintiff filed motions for review of those decisions, and this court granted review but denied the relief requested.

[10] On appeal, the plaintiff concedes that "the wrongful conduct rule bars a plaintiff's recovery of damages in a civil case where there is no genuine issue of material fact as to a sufficient causal nexus between the plaintiff's illegal conduct and his alleged injuries and when the plaintiff's conduct amounts to serious criminality." (Internal quotation marks omitted.) Accordingly, he does not address the four factors we typically consider in determining the extent of a legal duty as a matter of public policy: "(1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) *Jarmie* v. *Troncale*, supra, 306 Conn. 603.

Nevertheless, we conclude that consideration of these factors supports the court's conclusion in the present cases. First, an individual who lies to a doctor to obtain a prescription would not expect to be able to bring an action against the doctor for believing his or her lies. Second, precluding recovery in the present cases in which the patient committed fraud in seeking treatment would not discourage patients from seeking medical care for real medical conditions. Third, imposing a duty under the present circumstances would result in increased litigation because it would allow individuals to induce medical malpractice by falsely reporting symptoms and then bringing an action against the doctor for injuries allegedly resulting from any misdiagnosis. Fourth, and finally, as will be discussed further in part I of this opinion, the decisions of other jurisdictions support the denial of recovery when the plaintiff has suffered injuries as the result of illegally obtaining a controlled substance.

[11] One judge dissented in *Marks*, reasoning that, "[b]ecause possession of the firearm underlies any claim for liability in this case, public policy should preclude this [c]ourt from lending its aid to [the] plaintiff, who, in effect, bases his cause of action on his own illegal conduct." *Marks* v. *Childress*, supra, 1997 WL 33330917, *3 (Markey, J., dissenting).

---